## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EZRA BIRNBAUM, individually and on behalf of others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>GENERAL ELECTRIC COMPANY and H. LAWRENCE CULP, JR.<br><br>Defendants. | Case No. 1:19-cv-01013<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Ezra Birnbaum, individually and on behalf of all other persons similarly situated alleges the following based upon personal knowledge as to himself and his own acts and the investigation conducted by and through his attorneys, which included, among other things, a review of the public documents, announcements, United States Securities and Exchange Commission ("SEC") filings, wire and press releases, news articles and information readily obtainable on the internet that was published by the Defendants or regarding defendant General Electric Company ("GE" or the "Company"). Plaintiff believes that substantial evidentiary support exists for the allegations set forth herein after a reasonable opportunity for discovery.

### NATURE OF THE ACTION AND RELEVANT BACKGROUND

1.     This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased GE securities from October 12, 2018 through October 29, 2018, inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws as well as pursuing other remedies under the Securities Exchange Act of 1934.

2.     GE is a public company, with shares of its common stock registered with the SEC and listed on the New York Stock Exchange Inc. ("NYSE").  "GE Power," GE's largest Industrials segment, provides products and services related to energy production to customers worldwide.

**A.     GE acquires Alstom Energy.**

3.     In November 2015, GE purchased Alstom Energy for approximately $10.6 billion. Alstom is a French company that manufactures coal-fueled turbines used by power plants.

4.     At the time GE completed its acquisition of Alstom, GE publicly stated that it expected "the deal to generate $0.05-0.08 of earnings per share in 2016 and $0.15-0.20 of earnings per share by 2018."

5.     A year after completing its acquisition, GE disclosed in its 2016 Form 10-K that Alstom had gross assets of $21.3 billion, including $2.8 billion of property, plant and equipment, and $4.4 billion of intangible assets, principally attributed to customer relationships, patents and technology, and capitalized software.

6.     GE also disclosed that Alstom had liabilities of $23.2 billion, including $10.7 billion attributable to its expected costs needed to fulfill existing contracts with Alstom's customers.  At the time GE acquired Alstom, it had a negative book value of approximately $7.2 billion, accounting for minority interests that were left in some of the operations.

7.     GE added to its balance sheet as "good will" the $17.8 billion difference between Alstom's negative book value of $7.2 billion and the purchase price of $10.6 billion.

8.     Goodwill is the effective equivalent of the amount that was overpaid for an acquisition.

9.     The Company justified the $17.8 billion disparity between Alstom's book value and GE's purchase price as reflecting "estimated GE-specific synergies," including anticipated "additional revenue from cross-selling complementary product lines."

10.     GE's provision for Alstom goodwill was virtually unprecedented, causing some analysts to describe GE's acquisition of Alstom as "the most unusual deal" they had ever seen.

11.     In comparison, goodwill in similar industrial sector acquisitions over the past five years averaged 65% of the price paid.  It is very rare to accrue an amount for goodwill that exceeds the price of an acquisition, as GE did with Alstom.

12.     Accrued goodwill must be tested periodically (no less than once a year) to see if the amount reflected on the balance sheet remains appropriate, and to reassess whether the assumptions about future benefits from the business used to calculate goodwill remain justified considering the experience operating the acquired business (e.g., whether it exceeds fair value).

13.     GE purports to test its goodwill allocations in the third quarter of every fiscal year.

14.     In the third quarter of its 2017 fiscal year, GE concluded that the goodwill allocated to GE Power needed to be adjusted downward by $1.2 billion.  GE characterized this adjustment as "minor."

15.     The goodwill associated with GE Power was largely attributable to Alstom.

**B.     For GE Power, GE takes a $23 billion goodwill impairment charge.**

16.     Despite its normal practice of assessing goodwill allocations in the third quarter of each fiscal year, in the second quarter of its 2018 fiscal year, GE effected an "interim revision" of GE Power's goodwill in the amount of $2.1 billion.

17.     Notwithstanding this atypical early revision, only three months later, in September 2018, GE further assessed GE Power's goodwill and decided to write-off almost all the remaining $23.2 billion of accrued goodwill (the "GE Power Charge").

18.     The massive goodwill write-down amounts to an admission that the acquisition of Alstom that gave rise to the goodwill was ill-conceived, and the business so acquired does not have the earning power initially envisioned for it.

19.     In 2018, GE's former CEO, John Flannery, acknowledged GE's substantial overpayment for Alstom, stating, "[i]f we can go back in a time machine today, we would pay a substantially lower price than we paid."

**C.     GE names Defendant Culp as the Company's New CEO and Chairman and discloses the GE Power Charge.**

20.     On October 1, 2018, GE issued a press release announcing that it had appointed Defendant H. Lawrence Culp, Jr. as its new Chairman and Chief Executive Officer.

21.     At the same time and for the first time, GE disclosed that it would likely take the $23 billion GE Power Charge, although it indicated that the goodwill impairment "charge is not yet finalized and remains subject to review."

22.     Regarding the GE Power Charge, the press release also stated that: "The Company will provide additional commentary when it reports third quarter results."

23.     Most of the GE Power Charge related to its 2015 purchase of Alstom's energy business for $10.1 billion.  And worse, the actual write-down of the amount allocated to goodwill was greater than the cost of the Alstom acquisition.

**D.     GE had previously announced ongoing SEC investigations into its accounting practices.**

24.     Prior to the October 1, 2018 disclosure of the GE Power Charge, GE had disclosed that it was the subject of an SEC investigation relating to the Company's revenue recognition practices and internal controls over financial reporting related to long-term service agreements.

25.     The SEC was also investigating GE regarding its increase in future policy benefit reserves for GE Capital's run-off insurance operations.

26.     GE publicly disclosed both of those investigations earlier in 2018.

**E.      Unbeknownst to the market, the SEC expands its investigation into the GE Power Charge and the Department of Justice follows suit.**

27.      After GE's October 1, 2018 announcement of the Power Charge, GE learned that the SEC had expanded its investigation to include the GE Power Charge.

28.      In addition to the SEC's investigations, the Department of Justice ("DOJ") also got involved, opening an investigation into GE's accounting, including the GE Power Charge (collectively, the "Expanded Investigation").

29.      At the time, the market was unaware of the Expanded Investigation.

**F.      GE delays its 2018 third quarter earnings results and fails to disclose the Expanded Investigation, triggering the start of the Class Period.**

30.      On October 12, 2018, the first day of the Class Period, GE issued a press release announcing that it was moving its third quarter 2018 earnings release from October 25, 2018 to October 30, 2018.

31.      Defendants misleadingly stated that the earnings release was delayed to allow Defendant Culp "to complete initial business reviews and site visits following his appointment on October 1."

32.      As of October 12, GE knew that the Expanded Investigation posed a substantial likelihood that the outcome would prove materially detrimental to GE's earnings for past, current and future periods.  Having disclosed a purported reason for the delay in reporting third quarter earnings, GE was obligated to disclose the Expanded Investigation.

33.      Recognizing that GE's purported reason for the delay was suspicious, an October 12, 2018 article in *The Wall Street Journal* noted that "[a]nalysts were surprised by [the] delay, saying there possibly could be an unknown issue or a pending asset sale.  The company is telling investors that the delay is related to Mr. Culp's travel schedule as he is reviewing GE businesses."

34.     The *Wall Street Journal's* suspicions turned out to be dead on.  The delay was not because the new CEO needed more time, but rather because of the Expanded Investigation.

35.     GE's failure to disclose the Expanded Investigation was also improper given, prior to the Class Period, GE had made previous statements about the status of the SEC's investigations into GE's businesses.   GE needed to correct those statements considering the Expanded Investigation.

**G.      GE belatedly discloses the Expanded Investigation into the GE Power Charge.**

36.     Before the market opened on October 30, 2018, GE issued a press release announcing its third quarter 2018 financial results.

37.     Although the release mentioned the GE Power Charge of $23 billion, it did not disclose the Expanded Investigation relating to the GE Power Charge, nor any indication that a separate release relating to the Expanded Investigation would be forthcoming that same day.

38.     Pre-market trading rose sharply after this initial press release.

39.     Later that morning (at 8am ET), GE held its third quarter 2018 earnings conference call.  In prepared remarks at the beginning of the call, GE Chief Financial Officer, Jaimie S. Miller, disclosed the Expanded Investigation.

40.     That same day, GE filed its 2018 third quarter Form 10-Q with the SEC. GE's 10-Q also disclosed the Expanded Investigation.   According to GE's 10-Q, "[f]ollowing our announcement on October 1, 2018 about the expected non-cash goodwill impairment charge related to GE's Power business … the SEC expanded the scope of its investigation to include that charge as well."  GE also announced that "[s]taff from the DOJ are also investigating these matters."

**H.      GE knew of the Expanded Investigation by October 12 and had no justifiable reason for delaying its disclosure.**

41.      If a write-down or write-off is sizeable, the quarter in which the company allocates the write-down or write-off can have a dramatic impact on the market price for a company's securities.  Not only can imprecise procedures produce inaccurate market pricing decisions, but mistimed write-downs can frequently lead to insider trading or other market misconduct.

42.      Because write-downs or write-offs are material, significant or sizeable write-offs or write-downs raise questions for SEC staff regarding the integrity of the processes followed, as well as the timeliness of those processes.  The SEC has frequently cautioned public companies regarding the need to recognize write-downs or write-offs in a timely fashion.

43.      If the SEC followed normal processes, SEC staff contacted GE within 24-48 hours of GE's initial announcement of the GE Power Charge.  Given GE made its initial announcement on October 1, GE was likely aware of the Expanded Investigation by October 3.  Yet, GE waited until October 30, 2018 to disclose the Expanded Investigation.

44.      Exacerbating the problems GE's need for a write-down caused, GE issued a public statement on October 12, 2018 about its 2018 third quarter financials, yet failed to disclose that the GE Power Charge had caused the Expanded Investigation.

45.      GE's delay in disclosing the Expanded Investigation until October 30, 2018 also meant that GE's statements made prior to October 12, 2018 about the status of the SEC investigations into GE's businesses were the only authoritative disclosure about these events. As soon as GE knew of the Expanded Investigation, those prior statements became false and misleading.

46.     Because of GE's delay in making appropriate disclosures, over one billion GE shares traded on materially false and misleading information from October 12, 2018 through October 29, 2018.

## I.     The Expanded Investigation into the GE Power Charge was material and extraordinary.

47.     The SEC and DOJ often work closely together when investigating potential financial crimes.  If the SEC finds something "problematic," it typically shares any information with DOJ investigators.  As Tony Phillips, a criminal defense attorney at McKool Smith, noted, "[i]n general, the DOJ becomes interested when it looks like there is some effort to conceal the true health of a company."

48.     A former SEC Chairman has commented on the massive GE Power Charge and the unexpected timing of its occurrence: "Companies don't write down this amount of money and not get held accountable."  As noted by this former Chairman, "You have to get it right, and you start behind the eight-ball when the number is $22 billion."

49.     The SEC's and DOJ's investigations will likely focus on whether GE accurately followed accounting rules and corporate law when allocating goodwill on its balance sheet and when estimating the size of the write-down.  The former Chairman pointed out "[a]t issue will be how hard [GE] looked at this, how diligent they were in considering whatever warnings were circulated internally and the rationale for ignoring those warnings."

50.     Commentators have noted that the Expanded Investigation is unusual, given the large number of already ongoing investigations, and that it is going to cause problems for GE.

51.     As noted by analysts who follow GE, the SEC investigation is "going to be a cloud that overhangs the company until things get cleaned up."

52.     That analyst's assessment rings particularly true given GE's goodwill impairment charge is among the largest in recent history.

**J.      When GE discloses the Expanded Investigation, GE's stock price enters a state of free-fall.**

53.     After disclosing the Expanded Investigation, GE's stock price fell sharply from a closing price of $11.16 on October 29, 2018, to a closing price of $10.18, on October 30, 2018—a nearly 10% market decline—on trading of almost 345 million shares.  GE shares traded as low as $9.87 on October 30, 2018.

54.     Notably, GE's shares had jumped almost 2% in pre-market trading on October 30, 2018, after GE announced its third quarter 2018 earnings results and dividend cut, but before it disclosed the Expanded Investigation.

55.     To date, GE's stock price has not recovered.

**JURISDICTION AND VENUE**

56.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule l0b-5 promulgated thereunder by the SEC, 17 C.F.R § 240.10b-5.

57.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

58.     Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b).  GE's shares are traded in this District and many of the acts and practices complained of occurred in substantial part herein.

59.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited

to, the mails, interstate telephone communications, and the facilities of the national securities markets.

**PARTIES**

60.     As reflected in the accompanying PSLRA certification, Plaintiff purchased GE securities during the Class Period and was damaged thereby.

61.     Defendant GE is a New York corporation maintaining its principal place of business at 41 Farnsworth Street, Boston, Massachusetts.  GE shares trade on the NYSE under the ticker symbol "GE."

62.     Defendant Culp serves as the CEO and Chairman of GE.  Defendant Culp made false and misleading statements and/or failed to disclose material information during the Class Period.

**BACKGROUND**

A.     **GE's statements prior to the Class Period disclose that the SEC is investigating GE's accounting practices.**

63.     On February 23, 2018, GE issued the Company's 2017 10-K.  Regarding the SEC investigation into certain of GE's accounting practices, the 10-K stated:

> In late November 2017, staff of the Boston office of the U.S. Securities & Exchange Commission (SEC) notified us that they are conducting an investigation of GE's revenue recognition practices and internal controls over financial reporting related to long-term service agreements.  Following our investor update on January 16, 2018 about the increase in future policy benefit reserves for GE Capital's run-off insurance operations, as discussed in the Critical Accounting Estimates section, the SEC staff expanded the scope of its investigation to encompass the reserve increase and the process leading to the reserve increase.  We are providing documents and other information requested by the SEC staff, and we are cooperating with their ongoing investigation.

64.     On May 1, 2018, GE issued the Company's 10-Q for the first quarter of 2018.  With regard to the SEC investigation into certain of GE's accounting practices, the 10-Q stated:

In late November 2017, staff of the Boston office of the U.S. Securities & Exchange Commission (SEC) notified us that they are conducting an investigation of GE's revenue recognition practices and internal controls over financial reporting related to long-term service agreements. Following our investor update on January 16, 2018 about the increase in future policy benefit reserves for GE Capital's run-off insurance operations, as discussed in the Critical Accounting Estimates section of our Annual Report on Form 10-K, the SEC staff expanded the scope of its investigation to encompass the reserve increase and the process leading to the reserve increase. We are providing documents and other information requested by the SEC staff, and we are cooperating with their ongoing investigation

65.     On October 1, 2018, GE issued a press release announcing that GE had appointed

Defendant Culp as its new Chairman and CEO. That same release disclosed for the first time the

$23 billion GE Power Charge. The October 1, 2018 press release stated:

**GE Power business outlook declines, leading to shortfall relative to 2018 guidance; Company to take non-cash impairment charge related to GE Power**

Thomas W. Horton appointed as Lead Director

BOSTON – October 1, 2018 – GE (NYSE: GE) announced today that H. Lawrence Culp, Jr. has been named Chairman and Chief Executive Officer of the Company by a unanimous vote of the GE Board of Directors, effective immediately. Additionally, the GE Board has appointed Thomas W. Horton as Lead Director. Mr. Culp and Mr. Horton have been members of the Board since April 2018. Mr. Culp will succeed John Flannery as Chairman and CEO.

While GE's businesses other than Power are generally performing consistently with previous guidance, due to weaker performance in the GE Power business, the Company will fall short of previously indicated guidance for free cash flow and EPS for 2018. In addition, GE expects to take a non-cash goodwill impairment charge related to the GE Power business. GE Power's current goodwill balance is approximately $23 billion and the goodwill impairment charge is likely to constitute substantially all of this balance. The impairment charge is not yet finalized and remains subject to review. The Company will provide additional commentary when it reports third quarter results.

Mr. Culp said, "GE remains a fundamentally strong company with great businesses and tremendous talent. It is a privilege to be asked

to lead this iconic company. We will be working very hard in the coming weeks to drive superior execution, and we will move with urgency. We remain committed to strengthening the balance sheet including deleveraging. Tom and I will work with our board colleagues on opportunities for continued board renewal. We have a lot of work ahead of us to unlock the value of GE. I am excited to get to work."

Mr. Horton said, "Larry Culp has a proven track record in company transformation and delivering shareholder value. He is a strong leader with deep knowledge of industrials and technology, and an intense focus on execution, organization, and talent development. The board looks forward to working with Larry and his team to return GE to growth and long-term success. On behalf of the board, I thank John for his significant contributions and long service to GE."

Mr. Culp, 55, served as Chief Executive Officer and President of Danaher Corporation from 2001 to 2014. During his tenure he led the highly successful transformation of the company from an industrial manufacturer into a leading science and technology company. Under Mr. Culp's leadership, Danaher executed a disciplined capital allocation approach, including a series of strategic acquisitions and dispositions, a focus on investing for high-impact organic growth and margin expansion, and delivering strong free cash flow to drive long-term shareholder value. During his 14 years at the head of Danaher, the company's market capitalization and revenues grew five-fold.

**B.    GE makes materially false and misleading statements during the Class Period.**

66.    The Class Period starts on October 12, 2018.

67.    On that day, GE issued a press release announcing that it was delaying its third quarter 2018 financial results until October 30, 2018. Those financial results had been scheduled to be released on October 25, 2018:

> GE Moves Date of Third Quarter 2018 Earnings Release and Webcast to Tuesday, October 30, 2018
>
> October 12, 2018
>
> BOSTON—October 12, 2018--GE (NYSE: GE) today announced that it has moved the date of its third-quarter earnings release and webcast to Tuesday, October 30, 2018.

12

> ***The Company moved the call to allow GE Chairman and CEO
> Larry Culp to complete initial business reviews and site visits
> following his appointment on October 1.***  The Company will
> discuss the results for the third quarter ending September 30, 2018.
> Culp will share his initial observations, with more detail expected in
> early 2019.
>
> The third-quarter earnings webcast is scheduled to begin at 8:00 a.m.
> Eastern Time.  Materials will be posted on GE's investor website
> prior to the event.  To access the webcast, listeners should visit the
> GE website at: ge.com/investor.  An archived version of the webcast
> will be available on the GE website following the event.

[Emphasis added.]

68.    The foregoing statements were materially false and misleading and/or omitted to
state other facts necessary to make the statements made not misleading because, *inter alia,* the
Company failed to disclose (a) that the SEC had expanded its investigation into GE's accounting
practices; (b) that the SEC was investigating the GE Power Charge; (c) that the DOJ was now
investigating GE's accounting practices, including the GE Power Charge; (d) the possible
ramifications of the SEC's expanded investigation and the DOJ's new investigation; and (e) the
reasons that the Company had not made earlier disclosure of these investigations.

69.    Again, the SEC most likely notified GE that it was expanding the investigation
within 24 to 48 hours of GE's October 1 announcement of the GE Power Charge.

70.    GE intentionally withheld from the public information regarding the Expanded
Investigation until October 30, 2018.

71.    That intentional withholding breached GE's obligations under the federal securities
laws and effected a fraud and deceit on public investors and GE shareholders.

72.    At a minimum, when GE spoke about its quarterly earnings on October 12, 2018,
it was obligated to disclose the Expanded Investigation and its potential consequences.

73.    Defendants failed to disclose the GE Power Charge on October 12.

74. Also, GE had previously disclosed information about the status of the on-going SEC investigations.

75. Defendants were therefore duty-bound to correct those statements to reflect the expansion of the SEC's investigation into the Power Charge.

76. Defendants' statements were also materially false and misleading because they solely attributed the delay in issuing GE's third quarter earnings release to the Company's desire to enable Defendant Culp "to complete initial business reviews and site visits following his appointment on October 1."

77. But GE's earnings release was delayed principally to enable the Company to deal with the Expanded Investigation.

**C.   When GE reveals the truth, GE's stock plummets and harms investors.**

78. On October 30, 2018, the Company surprised investors and market participants when it announced that (a) the SEC had expanded its investigation into GE's accounting, including the SEC's investigation of the GE Power Charge; and (b) the DOJ was now investigating GE's accounting, including the GE Power Charge.

79. GE's CFO, Jamie S. Miller, utilized the following prepared remarks for GE's October 30, 2018 conference call:

> Based on our best estimate, we booked a charge of $22 billion, $19 billion related to our Power Gen reporting unit and $3 billion related to Grid. Most of the $22 billion charge is related to the Alstom acquisition, which occurred in the fourth quarter of 2015. We will true this up in the fourth quarter as it gets finalized.
>
> Also, the SEC expanded the scope of its ongoing investigation to include the goodwill charge. The Department of Justice is also investigating this charge. And the other areas that we have previously reported are part of the SEC's investigation. We are cooperating with the SEC and DOJ as they continue their work on these matters.

80.   The following is from GE's third quarter 10-Q, also issued on October 30, 2018:

> Following our announcement on October 1, 2018 about the expected non-cash goodwill impairment charge related to GE's Power business, as discussed further in Note 8 to the consolidated financial statements, the SEC expanded the scope of its investigation to include that charge as well. We are providing documents and other information requested by the SEC staff, and we are cooperating with the ongoing investigation. Staff from the DOJ are also investigating these matters, and we are providing them with requested documents and information as well.

81.   Once the Company disclosed the Expanded Investigation, GE's stock price fell sharply from a closing price of $11.16 on October 29, 2018, to close at $10.18 on October 30, 2018, on trading of almost 345 million shares.

## ADDITIONAL SCIENTER ALLEGATIONS

82.   Defendants acted with scienter because Defendants knew, or recklessly disregarded, that the public documents and statements they issued to the investing public in the name of the Company during the Class Period were materially false and misleading.

83.   Defendants knowingly and substantially participated or acquiesced in the issuance of those false and misleading statements and documents as primary violations of the federal securities laws.

84.   Defendants were active and culpable participants in issuing those false and misleading statements because they received information reflecting the true facts regarding the Expanded Investigation at least by October 3, 2018, well before they announced it to the investing public on October 30, 2018.

85.   Defendants knew and/or recklessly disregarded that the information they caused to be disclosed to the investing public was false and misleading. During the Class Period, the Defendants could not have perpetrated this fraud without the knowledge and complicity or, at least,

the reckless disregard, of personnel at the highest levels of the Company, including Defendant Culp, the Company's Chairman and CEO.

86.     Defendant Culp, because of his positions with GE, controlled the contents of the Company's public statements during the Class Period.  Defendant Culp was provided with, or had access to, copies of the documents alleged to be false and/or misleading prior to, or shortly after, GE issued them.  Defendant Culp also had the ability and opportunity to prevent GE from issuing those false and misleading statements, or at least could have caused their correction.

87.     Defendants knew, or were reckless in not knowing, that the marketplace was following the SEC investigation into the Company's accounting practices very closely.

88.     Because of his position and access to material non-public information, Defendant Culp knew or recklessly disregarded that the Extended Investigation had not been disclosed to, and was being concealed from, the public and that the failure to disclose that material fact was false and misleading.  Defendant Culp is responsible for the accuracy of GE's corporate statements and is therefore responsible and liable for any misrepresentations and material omissions contained in those statements.

89.     Finally, Defendants knew, or were severely reckless in disregarding, that the statements were materially false and misleading and/or omitted to state other facts necessary to make the statements made not misleading because, *inter alia*, Defendants knew about the Expanded Investigation but did not issue a timely corrective disclosure, allowing countless additional shares to be purchased by misled investors at inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

90.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired GE securities during the Class Period (the "Class") and were damaged from those

purchases.  Excluded from the Class are Defendants, the officers and directors of the Company, members of their immediate families and their legal representatives, heirs, successors or assigns, or any entity in which Defendants have or had a controlling interest.

91.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, GE shares were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by GE or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

92.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

93.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

94.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether Defendants violated federal securities law;

- whether Defendants' statements to the investing public during the Class Period misrepresented the Expanded Investigation;

- whether Defendant Culp caused GE to issue false and misleading statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading statements;

- whether the prices of GE securities during the Class Period were artificially inflated because of Defendants' conduct; and

- whether the members of the Class have sustained damages and, if so, what the proper measure of damages is.

95.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Further, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in managing this action as a class action.

96.     Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

### APPLICABILITY OF PRESUMPTION OF RELIANCE

97.     Plaintiff is entitled to a presumption of reliance under *Affiliated Ute Citizens of Utah v. United* States, 406 U.S. 1288 (1972) because the claims asserted against Defendants are predicated upon omissions of material fact that Defendants had a duty to disclose.

98.     In the alternative, Plaintiff is entitled to a presumption of reliance on Defendants' material misrepresentations and omissions pursuant to the fraud on the market doctrine for the following reasons.

99.     The market for GE's securities was open, well-developed and efficient at all relevant times.

100.    During the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about the Expanded Investigation.  These material

misstatements and/or omissions created an unrealistically positive assessment of the Company and its business, operations, and prospects.

101.    Defendants' material misrepresentations and omissions caused GE's securities to trade at artificially inflated prices.  When Plaintiff and other members of the Class purchased GE stock at those artificially inflated prices they sustained damages because, after Defendants revealed the truth, GE's stock price dropped significantly.

102.    At all relevant times, the market for GE's common stock (and other securities) was an efficient market for the following reasons, among others:

(a) The Company's common stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b) As a regulated issuer, GE filed periodic public reports with the SEC and/or the NYSE;

(c) Defendants regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or;

(d) GE was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

103.    Because GE stock traded in an efficient market, the market promptly digested current information regarding GE from all publicly available sources and reflected such

information in the price of the securities. Under these circumstances, all purchasers of GE securities during the Class Period suffered similar injury because they all purchased GE stock at artificially inflated prices and are entitled to a presumption of reliance.

## LOSS CAUSATION

104. Defendants' wrongful conduct directly and proximately caused the economic loss suffered by Plaintiff and the Class. During the Class Period, Plaintiff and the Class purchased or acquired GE securities at artificially inflated prices.

105. The price of GE securities significantly declined when Defendants revealed the true information, causing investors' losses. Following disclosure that the Expanded Investigation, the price of GE's common stock (as well as its other securities) declined sharply on heavy trading volume of almost 345 million shares.

## NO SAFE HARBOR

106. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading all relate to then-existing facts and conditions.

107. And to the extent certain statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made, and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

108. In the alternative, to the extent the statutory safe harbor is determined to apply to any forward-looking statements, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the

forward-looking statement was authorized or approved by an executive officer of GE who knew that the statement was false when made.

## COUNT I
### (Against All Defendants For Violations of
### Section 10(b) And Rule 10b-5 Promulgated Thereunder)

109.    Plaintiff repeats and realleges each and every allegation contained above.

110.    Plaintiff asserts this Count against Defendants based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

111.    During the Class Period, Defendants: (1) engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; (2) made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (3) employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members; (ii) artificially inflate and maintain the market price of GE's securities; and (iii) cause Plaintiff and other members of the Class to purchase GE securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants took the actions set forth in this Complaint.

112.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the SEC filings, press releases and other statements and documents described above.  Such reports, filings, releases and statements were materially false and misleading because they failed to disclose materially adverse information and misrepresented the truth about the Expanded Investigation.

113.    By virtue of his positions at GE, Defendant Culp had actual knowledge of the materially false and misleading statements and material omissions and, because of his knowledge, intended to deceive Plaintiff and the other members of the Class.

114.    Or in the alternative, Defendants acted with reckless disregard for the truth in that they failed, or refused to ascertain and disclose, those facts that would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Defendants' committed those acts and omissions willfully or with reckless disregard for the truth.  In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

115.    Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the CEO and Chairman of GE, Defendant Culp had knowledge of the details of GE's internal financial affairs and the Expanded Investigation.

116.    Defendant Culp is liable both directly and indirectly for the wrongs complained of in this Complaint.  Because of his positions of control and authority, Defendant Culp was able to and did, directly or indirectly, control the content of the statements of GE.  As an officer of a publicly-held company, Defendant Culp had a duty to disseminate timely, accurate, and truthful information with respect to GE's businesses, operations, future financial condition, future prospects, and the Expanded Investigation.  Due to the dissemination of the false and misleading reports, releases and public statements, the market price of GE securities was artificially inflated throughout the Class Period.   In ignorance of the adverse facts concerning the Expanded Investigation, Plaintiff and the other members of the Class purchased GE securities at artificially

inflated prices and relied upon the price of those securities, the integrity of the market for those securities and/or upon statements disseminated by Defendants and were damaged thereby.

117.    During the Class Period, GE common stock (and other securities) was traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described in this Complaint, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased GE securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased said securities or would not have purchased them at the inflated prices that were paid.  At the time of Plaintiff's and the Class's purchases, the true value of GE securities was substantially lower than the prices they paid.  GE's market price declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

118.    By reason of the conduct alleged in this Complaint, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

119.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period, upon the disclosure that the Company had disseminated false financial statements to the investing public related to the Expanded Investigation.

**COUNT II**
**(Violations of Section 20(a) of the**
**Exchange Act Against Defendant Culp)**

120.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

121.    During the Class Period, Defendant Culp participated in the operation and management of GE, and conducted and participated, directly and indirectly, in the conduct of GE's business affairs, including dealing with the Expanded Investigation.  Because of his senior position, defendant Culp knew the adverse non-public information regarding GE and the Expanded Investigation.

122.    As an officer and a director of a publicly owned company, Defendant Culp had a duty to disseminate accurate and truthful information with respect to GE's financial condition and the Expanded Investigation, and to correct promptly any public statements that had become materially false or misleading.

123.    Because of his position of control and authority as a senior officer, Defendant Culp was able to, and did, control the contents of the various reports, press releases and public filings which GE disseminated in the marketplace during the Class Period concerning GE and its financial prospects.  Throughout the Class Period, Defendant Culp exercised his power and authority to cause GE to engage in the wrongful acts complained of in this Complaint.  Defendant Culp therefore, was a "controlling person" of GE within the meaning of Section 20(a) of the Exchange Act.  In this capacity, he participated in the unlawful conduct alleged that artificially inflated the market price of GE securities.

124.    Defendant Culp therefore acted as a controlling person of GE.  By reason of his senior management position at GE, Defendant Culp had the power to direct the actions of, and exercised the same to cause, GE to engage in the unlawful acts and conduct complained of in this Complaint.  Defendant Culp exercised control over the financial operations of GE and possessed the power to control the specific activities, which comprise the primary violations about which Plaintiff and the other members of the Class complain.

125.    By reason of the above conduct, Defendant Culp is liable pursuant to Section 20(a) of the Exchange Act for the violations committed by GE.

## PRAYER FOR RELIEF

126. WHEREFORE, Plaintiff demands judgment against Defendants as follows:

    A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

    B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

    C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees, and other costs; and

    D.    Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

127. Plaintiff demands a trial by jury.

Date: February 1, 2019               Respectfully Submitted,

                                    /s/ U. Seth Ottensoser
                                    U. Seth Ottensoser
                                      so@kellerlenkner.com
                                    KELLER LENKNER LLC
                                    1330 Avenue of the Americas
                                    New York, NY 10019
                                    (212) 653-9715

                                    Ashley C. Keller (pro hac vice forthcoming)
                                      ack@kellerlenkner.com
                                    Seth A. Meyer (admission to SDNY bar pending)
                                      sam@kellerlenkner.com
                                    Marquel P. Reddish (pro hac vice forthcoming)
                                      mpr@kellerlenkner.com
                                    KELLER LENKNER LLC
                                    150 N. Riverside Plaza, Suite 4270
                                    Chicago, Illinois, 60606
                                    (312) 741-5222

                                    *Counsel for Plaintiff*