**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EZRA BIRNBAUM, Individually and On Behalf of All Others Similarly Situated, | Civil Action No.: 1:19-cv-01013 |
| Plaintiff, | |
| v. | |
| | CLASS ACTION |
| GENERAL ELECTRIC COMPANY and H. LAWRENCE CULP, JR., | |
| Defendants. | |
| SHEET METAL WORKERS LOCAL 17 TRUST FUNDS, Individually and On Behalf of All Others Similarly Situated, | Civil Action No.: 1:19-cv-01244 |
| Plaintiff, | |
| v. | |
| | CLASS ACTION |
| GENERAL ELECTRIC COMPANY, JOHN L. FLANNERY, RUSSELL STOKES, and JAMIE S. MILLER, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE GE INVESTOR GROUP FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF LEAD COUNSEL**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ................................................................................................... 2

ARGUMENT ........................................................................................................................... 6

I.   THE RELATED ACTIONS SHOULD BE CONSOLIDATED ....................................... 6

II.  THE COURT SHOULD APPOINT MOVANT AS LEAD PLAINTIFF ......................... 8

A.   The PSLRA's Provisions Concerning the Appointment of Lead Plaintiff .................... 8

B.   Movant Satisfies the Lead Plaintiff Provisions of the PSLRA ...................................... 9

1.   Movant Filed a Timely Motion ................................................................................. 9

2.   Movant Has the Largest Financial Interest in the Relief Sought By the Class ....... 10

3.   Movant Meets Rule 23's Typicality and Adequacy Requirements ........................ 11

(i)   Movant's Claims Are Typical of the Claims of the Class ................................. 12

(ii)  Movant Will Fairly and Adequately Protect the Interests of the Class .............. 13

III. MOVANT'S CHOICE OF COUNSEL SHOULD BE APPROVED .............................. 16

CONCLUSION ...................................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
  252 F.R.D. 188 (S.D.N.Y. 2008) ................................................................................. 12

*City of Riviera Beach Gen. Emples. Ret. Sys. v. Macquarie Infrastructure Corp*.,
  No. 18-CV-3608 (VSB), 2019 U.S. Dist. LEXIS 14860 (S.D.N.Y. Jan. 30, 2019) ................. 9

*Ferrari v. Impath, Inc.*,
  2004 U.S. Dist. LEXIS 13898 (S.D.N.Y. July 15, 2004) .......................................... 7

*Foley v. Transocean Ltd.*,
  272 F.R.D. 126 (S.D.N.Y. 2011) .......................................................................... 8, 10

*Gen. Tel. Co. of the Southwest v. Falcon*,
  457 U.S. 147 (1982) ........................................................................................... 13

*In re Bear Stearns Cos. Sec., Derivative & ERISA Litig.*,
  2008 U.S. Dist. LEXIS 106327 (S.D.N.Y. Dec. 29, 2008) ..................................... 12

*In re Drexel Burnham Lambert Grp., Inc*.,
  960 F.2d 285 (2d Cir. 1992) ................................................................................ 12

*In re eSpeed, Inc., Sec. Litig.*,
  232 F.R.D. 95 (S.D.N.Y. 2005) ......................................................................... 2, 11

*In re GE Secs. Litig.*,
  No. 09-Civ.-1951 (DC), 2009 U.S. Dist. LEXIS 69133 (S.D.N.Y. July 29, 2009) ................. 14

*In re Gentiva Sec. Litig.*,
  281 F.R.D. 108 (E.D.N.Y. 2012) ........................................................................... 1

*In re Milestone Scientific Sec. Litig.*,
  183 F.R.D. 404 (D.N.J. 1998) .............................................................................. 14

*In re Orion Sec. Litig*.,
  No. 08 Civ. 1328 (RJS), 2008 U.S. Dist. LEXIS 55368 (S.D.N.Y. July 8, 2008) ................. 12

*In re Oxford Health Plans, Inc. Sec. Litig*,
  182 F.R.D. 42 (S.D.N.Y.) ..................................................................................... 12

*Johnson v. Celotex Corp.*,
  899 F.2d 1281 (2d Cir. 1990) ............................................................................. 6, 7

*Kaplan v. Gelfond*,
  240 F.R.D. 88 (S.D.N.Y. 2007) .......................................................................... 7, 10

*Mitchell v. Complete Mgmt., Inc.*,
  No. 99-cv-1454, 1999 U.S. Dist. LEXIS 14460 (S.D.N.Y. Sept. 17, 1999) ............................ 7

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*,
  275 F.R.D. 187 (S.D.N.Y. 2011) .................................................................................. 14

*Primavera Familienstifung v. Askin*,
  173 F.R.D. 115 (S.D.N.Y. 1997) .................................................................................. 7

*Reimer v. Ambac Fin. Group, Inc.*,
  No. 0-Civ.-411 (NRB), 2008 U.S. Dist. LEXIS 38729 (S.D.N.Y. May 9, 2008) .................... 13

*Richman v Goldman Sachs Grp*,
  274 F.R.D. 473 (S.D.N.Y. 2011) .................................................................................. 13

*Strougo v. Brantley Capital Corp.*,
  243 F.R.D. 100 (S.D.N.Y. 2007) .................................................................................. 12

*Takeda v. Turbodyne Techs., Inc.*,
  67 F. Supp. 2d 1129 (C.D. Cal. 1999) ...................................................................... 6, 7

*Vanamringe v. Royal Grp. Techs., Ltd.*,
  237 F.R.D. 55 (S.D.N.Y. 2006) .................................................................................. 14

*Weiss v. Friedman, Billings, Ramsey Group, Inc.*,
  05-cv-4617 (RJH), 2006 U.S. Dist. LEXIS 3028 (S.D.N.Y. Jan. 24, 2006) ........................ 10

*Weisz v. Calpine Corp.*,
  No. 02-cv-1200, 2002 U.S. Dist. LEXIS 27831 (N.D. Cal. Aug. 19, 2002) ............................ 7

*Weltz v. Lee*,
  199 F.R.D. 129 (S.D.N.Y. 2001) ............................................................................ 6, 10

**Statutes**

15 U.S.C. § 78j(b) ........................................................................................................ 2

15 U.S.C. § 78t(a) ........................................................................................................ 2

15 U.S.C. § 78u-4(a)(3)(A) ...................................................................................... 8, 10

15 U.S.C. § 78u-4(a)(3)(A)(i) .................................................................................... 9, 10

15 U.S.C. § 78u-4(a)(3)(B) ................................................................................... passim

15 U.S.C. § 78u-4(a)(3)(B)(i) .................................................................................... 8

15 U.S.C. § 78u-4(a)(3)(B)(iii) ............................................................................. 10, 11

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ........................................................................... 9, 16

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) ......................................................................... 11

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) ......................................................................... 16

15 U.S.C. § 78u-4(a)(3)(B)(v) ................................................................................... 16

15 U.S.C. § 78u-4(e) ............................................................................................... 11

**Rules**

Fed. R. Civ. P. 23(a) ................................................................................................. 2

Fed. R. Civ. P. 42(a) ............................................................................................. 6, 7

Movants Neil B. Bettenhausen: (i) individually, (ii) as assignee of Nancy L. Bettenhausen;[1] and (iii) as trustee of the Neil B. and Nancy L. Bettenhausen Trust; Richard S. Karplus: (i) individually, (ii) as assignee of Michelle H. Delore,[2] and (iii) as Trustee of the Peter Karplus Supplemental Needs Trust; Douglass S. Heckman; and George Bonheur (collectively, the "GE Investor Group" or "Movant"), on behalf of itself and all similarly situated entities and persons, respectfully submits this Memorandum of Law in support of its motion ("Motion") to: (1) consolidate the above-captioned actions; (2) appoint Movant as Lead Plaintiff on behalf of all entities or persons who purchased or otherwise acquired the securities of General Electric Company ("GE" or the "Company") from December 27, 2017 through October 29, 2019, both dates inclusive; (3) approve Movant's selection of the law firm of Levi & Korsinsky, LLP ("Levi & Korsinsky") as Lead Counsel and Kuznicki Law, PLLC ("Kuznicki Law") as additional counsel for the putative class; and (4) grant such other and further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

Presently pending before the Court are two related class actions (the "Related Actions")[3] brought on behalf of all persons who purchased or otherwise acquired the securities of GE (collectively, the "Class") between December 27, 2017 through October 29, 2019,[4] both dates inclusive (the "Class Period"). Plaintiffs in the Related Actions allege violations of §§10(b) and

---

[1] The Bettenhausens are husband and wife.

[2] Michelle H. Delore and Richard S. Karplus are husband and wife.

[3] The two actions pending in this Court are: *Birnbaum v. General Electric Company, et al.,* Case No 1:19-cv-01013 filed in this Court on February 1, 2019 (the "*Birnbaum* Action") and *Sheet Metal Workers Local 17 Trust Funds v. General Electric Company, et al.,* Case No 1:19-cv-01244 filed in this Court on February 8, 2019 (the "*Sheet Metal Workers* Action") (together, the "Related Actions").

[4] Plaintiff in the *Birnbaum* Action proposes a class period of October 12, 2018 through October 29, 2018, inclusive, while plaintiff in the *Sheet Metal Workers* Action proposes a longer, more expansive class period of December 27, 2017 through October 29, 2018, inclusive. Movant adopts the longer Class Period, December 27, 2017 through October 29, 2018, inclusive, because it is the "larger, most inclusive class period". *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113 (E.D.N.Y. 2012) (finding the most inclusive class period proper in analyzing lead plaintiff motion).

20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§78j(b) and 78t(a),

and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. §240.10b-5.

The Private Securities Litigation Reform Act of 1995, as amended, 15 U.S.C. §78u-

4(a)(3)(B) (the "PSLRA"), provides for the Court to appoint as lead plaintiff the movant that has

the largest financial interest in the litigation that has also made a *prima facie* showing that he, she,

or it is an adequate class representative under Rule 23 of the Federal Rules of Civil Procedure. *See*

*In re eSpeed, Inc., Sec. Litig.*, 232 F.R.D. 95, 102 (S.D.N.Y. 2005) ("At the lead plaintiff stage of

the litigation, the party moving for lead plaintiff of the consolidated action need only make a

preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23.")

(quotations omitted). Movant has lost over ***$3.2 million*** as a result of the alleged fraud during the

Class Period.[5] Accordingly, Movant believes it has the largest financial interest in the outcome of

this litigation. Moreover, Movant satisfies the requirements of Rule 23 in that its claims are typical

of the claims of the Class, and it will fairly and adequately represent the interests of the Class.[6]

For the reasons summarized herein and discussed more fully below, Movant's Motion

should be granted in its entirety.

## FACTUAL BACKGROUND

GE is a 126-year old industrial conglomerate with a number of primary business units,

including Lighting, Aviation, Healthcare, Power, and Capital. ¶1.[7] By far, GE's largest and most

---

[5] Certifications identifying Movant's transactions in GE, as required by the PSLRA, as well as a chart identifying its losses, and a joint declaration executed by movants evidencing their intention to pursue the Action in a cohesive and collaborative manner, are attached to the Declaration of Shannon L. Hopkins, dated April 2, 2019 ("Hopkins Decl."), as Exhibits A, B, and E respectively.

[6] The "Class" is comprised of all persons, other than defendants, who purchased or otherwise acquired GE securities during the Class Period. While the *Sheet Metal Workers* Action only includes common stock, the *Birnbaum* Action specifically includes Class members who purchased "securities" which, by definition, includes options.

[7] Citations to "¶ __" are to paragraphs of the Class Action Complaint (the "Complaint") filed in the *Sheet Metal Workers* Action. Unless otherwise defined, capitalized terms shall have the same meaning set forth in the Complaint. The facts set forth in the Complaint are incorporated herein by reference.

important segment is GE Power, which earned $36 billion in revenue in 2017—nearly 30% of the Company's revenue for the year. ¶2. The vast majority of GE Power's revenue comes from the sale and servicing of its Gas Power Systems – large gas turbines that the Company sells to power utilities across the globe. *Id.* GE staked the future of its GE Power segment on the development of a new turbine type called the "H-Class," also known as High Efficiency, Air Cooled ("HA"), which purported to deliver improved efficiency and reliability over prior turbines and was expected to drive customer demand. ¶3.

In reality, the H-Class turbine was disastrously defective. ¶4. Specifically, the coating used to keep the turbines' blades from overheating was ineffective, leading to dangerous oxidation that could cause the turbines to fail after as little as one year of use, in turn causing power outages in the areas serviced by the utilities using GE's turbines, and requiring months-long repairs. *Id.* Data that was later revealed from French utilities showed that power plants using GE's H-Class turbines suffered ***four times as many outages*** as other plants. *Id.*

As GE was growing and developing the new H-Class turbine product, GE Power made its largest-ever industrial acquisition in 2015, acquiring French company Alstom's power business for $10.6 billion. ¶5. By the end of 2015, GE's Power segment goodwill balance had ballooned to nearly $23 billion, increasing to $26.4 billion at the end of 2016, and valued at over $25 billion as of December 31, 2017. *Id.*  The Alstom acquisition turned out to be a disaster and GE overpaid at the top of the market, right at the time that demand was beginning to wane in what had become an oversupplied global power market. *Id.*

Despite signs of trouble that emerged early in the Class Period, defendants assured the public that the problems with GE's H-Class turbines were minor, easily fixable, and in no way widespread or systemic. ¶6. Indeed, during the Class Period, defendants represented that GE Power

"is a fundamentally strong franchise with leading technology" and GE was "proud of the HA gas turbine technology." ¶7. When GE Power began to experience "softening demand" for its turbines in the first quarter of 2018, GE falsely attributed this reduction entirely to external factors, such as "excess capacity in developed markets," and "continued pressure in oil and gas applications and macroeconomic and geopolitical environments…energy efficiency, renewable energy penetration and delays in expected orders," rather than any performance issues with the turbines. *Id.*

Investors began to learn the truth about GE's "flagship" H-Class turbines on September 19, 2018 when defendants disclosed in a LinkedIn post that four H-Class turbines were shut down due to blade problems discovered at a Texas power plant. ¶8. The Company also admitted that a series of delays had impacted "the completion of the three HA-equipped power plants in Pakistan" which GE said "were caused by a mix of factors - some in our control and others that were out of our hands." *Id.* Defendants further revealed that the Company had "identified an issue that we expect to impact our HA units" involving "an oxidation issue that affects the lifespan of a single blade component" and warned that the same oxidation issue was likely to lead to additional turbine shutdowns at other plants. *Id.*

However, defendants again downplayed the issue, assuring investors that "[t]he minor adjustments that we need to make do not make the HA any less of a record setting turbine – they are meeting – and in many cases exceeding – their performance goals at every customer site today." *Id.*

This news inflamed industry analysts. JPMorgan analyst Stephen Tusa warned investors that ***there could no longer be any doubt that GE Power's turbine issues were "company-specific" and "structural,"*** and not due to the "cyclical nature of the power industry downturn." ¶9. Tusa

also explained that the blade issue was not a simple or minor problem to fix, as repairs to the faulty turbines would require "close to perfection [on] a microscopic level." *Id.*

In response to fallout from the turbine issues, GE's stock price dropped $1.59 per share or 12%, from $12.86 per share on September 19, 2018 to $11.27 per share on September 25, 2018 — wiping out over $13 billon in the Company's market cap. *Id.*

On October 1, 2018, the Company unexpectedly announced that it had removed John L. Flannery as chairman and CEO after only a year on the job and had replaced him with Lawrence Culp. ¶10. GE also announced that it would likely have to take a $23 billion goodwill impairment charge for its ailing Power business, ***eliminating almost all the goodwill it recorded on its balance sheet for its Power business***. *Id.*

On October 30, 2018, GE confirmed a massive goodwill impairment charge of $22 billion related to GE Power, disclosed that the SEC and Department of Justice had launched civil and criminal investigations into the goodwill charge, slashed its dividend to 1 cent, and announced that it would be forced to reorganize its Power business, separating the floundering Gas Power Systems business from the rest of the segment. ¶11.

Moreover, the Company's Q3 2018 results revealed that structural flaws in GE Power's H-Class turbines had caused demand to plummet and costs to skyrocket and had sold a mere 28 turbines in the first nine months of the year, compared to 63 in the prior year – a decline of *56%*. ¶12.

Indeed, CEO Culp admitted that Defendants had misrepresented the state of GE's Power segment and stated during the Company's conference call that "what we need to do at Power is wring out a little bit of the undue optimism." ¶13. Culp added: "this is a good opportunity for us to, frankly, manage this franchise better than we have…Clearly, there are a lot of issues that --

from the past that the team is dealing with." *Id.* The market reacted in astonishment. ¶14. Discussing the gravity of GE's announcement, former SEC Chairman Harvey Pitt, stated: "Companies don't write down this amount of money and not get held accountable." *Id.* Pitt further added: "You have to get it right, and you start behind the eight-ball when the number is $22 billion." *Id.*

In reaction to GE's disclosures, the Company's stock plummeted an additional $0.98 per share from $11.16 per share on October 29, 2018, to $10.18 per share on October 30, 2018—a significant decline of over 9% wiping out $8.5 billion more of the Company's market capitalization in one trading day, inflicting significant losses and damages on Plaintiff and the Class. ¶15.

**ARGUMENT**

## I.      THE RELATED ACTIONS SHOULD BE CONSOLIDATED

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this [sub-]chapter has been filed," the Court shall not make the determination of the most adequate plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii). Thereafter, the Court "shall appoint the most adequate plaintiff for the consolidated actions." *Id.*

Under Rule 42(a) of the Federal Rules of Civil Procedure, consolidation is appropriate when the actions involve common questions of law or fact. *See* Fed. R. Civ. P. 42(a); *Weltz v. Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. 2001) ("[C]ourts have taken the view that considerations of judicial economy favor consolidation." (quoting *Johnson v. Celotex Corp.,* 899 F.2d 1281, 1284-85 (2d Cir. 1990)); *see also Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1132-33 (C.D. Cal. 1999).

6

Consolidation is particularly appropriate in securities class action litigation such as this. *See Mitchell v. Complete Mgmt., Inc.*, No. 99-cv-1454, 1999 U.S. Dist. LEXIS 14460, at *4 (S.D.N.Y. Sept. 17, 1999) ("In securities actions where the complaints are based on the same 'public statements and reports' consolidation is appropriate if there are common questions of law and fact . . . .") (citation omitted); *Primavera Familienstifung v. Askin*, 173 F.R.D. 115, 129 (S.D.N.Y. 1997) (same). Courts, therefore, routinely find that consolidating multiple securities cases is an efficient solution where the complaints arise generally from the same alleged false and misleading statements. *See, e.g.*, *Weisz v. Calpine Corp.*, No. 02-cv-1200, 2002 U.S. Dist. LEXIS 27831, at *7-8 (N.D. Cal. Aug. 19, 2002); *Takeda*, 67 F. Supp. 2d at 1132-33 (consolidation appropriate in securities class actions). Moreover, the difference in the class periods alleged in the Related Actions do not prevent consolidation. *See Ferrari v. Impath, Inc*., 2004 U.S. Dist. LEXIS 13898, at *8-9 (S.D.N.Y. July 15, 2004) (consolidating sixteen related actions despite differences in class period because every complaint "is premised on the same facts and statutory provisions"); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007) ("[d]ifferences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation.").

The Related Actions pending before this Court present similar factual and legal issues, as they both involve the same subject matter and are based on the same wrongful course of conduct. Each names GE and certain of its officers and/or directors as defendants. Because the Related Actions arise from the same facts and circumstances and involve the same subject matter, the same discovery and similar class certification issues will be relevant to all Related Actions. Accordingly, consolidation under Rule 42(a) is appropriate. *See Celotex Corp.*, 899 F.2d at 1285.

7

## II.      THE COURT SHOULD APPOINT MOVANT AS LEAD PLAINTIFF

### A.  The PSLRA's Provisions Concerning the Appointment of Lead Plaintiff

The PSLRA mandates that the Court decide the lead plaintiff issue "[a]s soon as practicable." 15 U.S.C. §78u-4(a)(3)(B)(ii). The PSLRA establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a) and (a)(3)(B).

*First,* the PSLRA provides that within 20 days after the date on which the first class action is filed, the plaintiff to that action shall cause to be published in a widely circulated national business publication or wire service, a notice advising members of the proposed class of the pendency of the action and their right to move for appointment as lead plaintiff within 60 days of the notice publication. *See Foley v. Transocean Ltd*., 272 F.R.D. 126, 127 (S.D.N.Y. 2011) (citing 15 U.S.C. §78u-4(a)(3)(A)).

Under 15 U.S.C. §78u-4(a)(3)(B)(i), the Court will, no later than 90 days after the date on which a notice is published, consider any motion filed by a purported class member in response to the notice and appoint as lead plaintiff the movant that the court determines to be "most capable of adequately representing the interests of class members." The PSLRA provides a presumption that the most "adequate plaintiff" to serve as lead plaintiff is the "person or group of persons" that:

(aa)    has either filed the complaint or made a motion in response to a notice;

(bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

8

15 U.S.C. §78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted only upon proof by a Class member that the presumptive most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

As set forth below, Movant has complied with the procedural prerequisites of the PSLRA and possesses, to the best of its knowledge, the largest financial interest in the litigation of any other Class member(s) seeking appointment as lead plaintiff. Movant is also unaware of any unique defenses that Defendants could raise against it. Therefore, Movant is entitled to the presumption that it is the most adequate plaintiff to represent the Class and, as a result, should be appointed lead plaintiff in the Action.

### B.   Movant Satisfies the Lead Plaintiff Provisions of the PSLRA

As described in further detail below, Movant should be appointed lead plaintiff because it satisfies all the requirements of the PSLRA. Movant filed a timely motion to be appointed lead plaintiff, holds the largest financial interest in the relief sought by the Class and satisfies the typicality and adequacy requirements of Rule 23.

### 1.   Movant Filed a Timely Motion

On February 1, 2019, which was within twenty (20) days of the filing of the first-filed complaint as required by 15 U.S.C. §78u-4(a)(3)(A)(i), plaintiff in the first-filed *Birnbaum* Action published notice through *PRNewswire*, a widely circulated national business-oriented wire service. *See* Hopkins Decl., Ex. C; *see also City of Riviera Beach Gen. Emples. Ret. Sys. v. Macquarie Infrastructure Corp.*, No. 18-CV-3608 (VSB), 2019 U.S. Dist. LEXIS 14860 (S.D.N.Y. Jan. 30, 2019) (noting that *PRNewswire* is "a widely-circulated national business-orientated wire service, fulfilling the PSLRA requirements"). Consequently, any member of the proposed Class was

required to seek appointment as lead plaintiff within 60 days after publication of that notice. *See* 15 U.S.C. §78u-4(a)(3)(A)(i). Therefore, the time period in which class members may move to be appointed lead plaintiff herein under 15 U.S.C. §78u-4(a)(3)(A) and (B) expires on April 2, 2019. Pursuant to the PSLRA and within the requisite time frame after publication of the required notice, Movant herein timely moves this Court to be appointed lead plaintiff on behalf of all members of the Class.

### 2.   Movant Has the Largest Financial Interest in the Relief Sought By the Class

According to 15 U.S.C. §78u-4(a)(3)(B)(iii), the Court shall appoint as lead plaintiff the movant with the largest financial loss in the relief sought by the action. As demonstrated herein, Movant has the largest known financial interest in the relief sought by the Class. *See* Hopkins Decl., Ex. B. The movant who has the largest financial interest in this litigation and meets the adequacy and typicality requirements of Rule 23 is presumptively the lead plaintiff. *See Weltz v. Lee*, 199 F.R.D. 129, 132 (S.D.N.Y. 2001); *Foley,* 272 F.R.D. 126, 128 (stating "[a]lthough courts have differed on how much weight to assign to each of the factors, the Second Circuit, as have other courts, shall place the most emphasis on the last of the four factors: the approximate loss suffered by the movant."). *See also Kaplan*, 240 F.R.D. at 93 (same); *Weiss v. Friedman, Billings, Ramsey Group, Inc.,* 05-cv-4617 (RJH), 2006 U.S. Dist. LEXIS 3028, *13-14 (S.D.N.Y. Jan. 24, 2006) ("We believe that the best yardstick by which to judge 'largest financial interest' is the amount of loss, period").

Under the PSLRA, damages on shares retained through the end of the class period are calculated based on: (i) the difference between the purchase price paid for the shares and the average trading price of the shares during the 90-day period beginning on the date the information correcting the misstatement was disseminated, or (ii) the difference between the purchase price

paid for the shares and the average trading price of the shares between the date when the misstatement was corrected and the date on which the plaintiff sold their shares, if they sold their shares before the end of the 90-day period. 15 U.S.C. §78u-4(e).

Within the Class Period, Movant purchased GE securities in reliance upon the materially false and misleading statements issued by Defendants and was injured thereby. Movant suffered substantial losses of approximately $3,253,106.41 under a last-in-first-out ("LIFO") analysis. *See In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. at 101 (noting that courts prefer losses to be calculated under LIFO); *see also* Hopkins Decl., Ex. B (Loss Chart).[8] Movant, thus, has a significant financial interest in the outcome of this case. To the best of its knowledge, there are no other applicants who have sought, or are seeking, appointment as lead plaintiff that have a larger financial interest and also satisfy Rule 23.

### 3.  Movant Meets Rule 23's Typicality and Adequacy Requirements

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(iii), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) provides that a class may be certified only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative party are typical of the claims or defenses of the class; and (4) the representative party will fairly and adequately protect the interests of the class. Of these four prerequisites, only two—typicality and adequacy—directly address the personal characteristics of the lead plaintiff

---

[8] Movant purchased a total of 1,131,372 common shares, expended net funds of $7,213,207.83 on its common stock during the Class Period, retained 507,324 common shares through the close of the Class Period, and suffered $3,253,106.42 in losses from both common stock and options.

movant. Consequently, in deciding a lead plaintiff motion, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a) and defer examination of the remaining requirements until a class certification motion is filed. *See In re Oxford Health Plans, Inc. Sec. Litig*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) ("Typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA."). *See also Strougo v. Brantley Capital Corp.,* 243 F.R.D. 100, 105 (S.D.N.Y. 2007); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.,* 252 F.R.D. 188, 191 (S.D.N.Y. 2008) ("At this stage of the litigation, the moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met.").

As detailed below, Movant satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as lead plaintiff.

### (i)      Movant's Claims Are Typical of the Claims of the Class

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. A plaintiff satisfies the typicality requirement if the plaintiff has: (a) suffered the same injuries as the absent class members; (b) the injuries are a result of the same course of conduct by defendants; and (c) the plaintiff's claims are based on the same legal issues that prove the defendant's liability. *See In re Drexel Burnham Lambert Grp., Inc*., 960 F.2d 285, 291 (2d Cir. 1992); *see also In re Bear Stearns Cos. Sec., Derivative & ERISA Litig.,* 2008 U.S. Dist. LEXIS 106327, at *29 (S.D.N.Y. Dec. 29, 2008) ("However, the claims of the class representative need not be identical to those of all members of the class."); *In re Orion Sec. Litig*., No. 08 Civ. 1328 (RJS), 2008 U.S. Dist. LEXIS 55368, at *12 (S.D.N.Y. July 8, 2008) ("Indeed, the possibility of factual distinctions between the claims of the named plaintiffs and those of other class members

does not destroy typicality, as similarity of legal theory may control even in the face of differences of fact.") (quotations omitted).[9]

In this case, the typicality requirement is met because Movant's claims are identical to, and neither compete, nor conflict with the claims of the other Class members. *See Richman v. Goldman Sachs Grp*, 274 F.R.D. 473, 479 (S.D.N.Y. 2011) ("The typicality requirement is satisfied when the claims of the proposed lead plaintiff arise from the same conduct from which the other class members' claims and injuries arise.") (quotations omitted). Movant, like the other members of the Class, acquired GE securities during the Class Period at prices artificially inflated by the Defendants' materially false and misleading statements, and was damaged thereby. Thus, the claims of Movant are typical, if not identical, to those of the other members of the Class because Movant suffered losses similar to those of other Class members and its losses resulted from the Defendants' common course of wrongful conduct. Accordingly, Movant satisfies the typicality requirement of Rule 23(a)(3). *See Reimer v. Ambac Fin. Group, Inc.,* 2008 U.S. Dist. LEXIS 38729, *12 (S.D.N.Y. May 9, 2008) ("Typicality is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.").

### (ii) Movant Will Fairly and Adequately Protect the Interests of the Class

Movant is also an adequate representative for the Class. Under Rule 23(a)(4), representative parties must also "fairly and adequately protect the interests of the class." Adequate representation will be found if the representative has: (a) retained able and experienced counsel; and (b) the representative has no fundamental conflicts of interest with the interests of the class as

---

[9] Further, though irrelevant to the instant motion, a finding of typicality frequently supports a finding of commonality and *vice versa*. *See Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 158 n.13 (1982) (noting that the typicality and commonality requirements tend to merge).

a whole. *See Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 190 (S.D.N.Y. 2011) ("In considering the adequacy of a proposed lead plaintiff, a court must consider: (1) whether the lead plaintiff's claims conflict with those of the class; and (2) whether class counsel is qualified, experienced, and generally able to conduct the litigation."); *In re GE Secs. Litig.*, 2009 U.S. Dist. LEXIS 69133, at *15 (S.D.N.Y. July 29, 2009) (Movant "satisfies the adequacy requirement because its interests are aligned with those of the putative class, and it has retained competent and experienced counsel."). The PSLRA directs the Court to limit its inquiry regarding the adequacy of the movant to whether the interests of the movant are clearly aligned with the members of the putative Class and whether there is evidence of any antagonism between the interests of the movant and other members of the Class. 15 U.S.C. §78u-4(a)(3)(B).

Movant has met both of the requirements under Rule 23(a)(4) to fairly and adequately protect the interests of the putative class. Not only is there no evidence of conflict between Movant's interests and those of the other members of the putative Class, but the GE Investor Group has a significant financial interest at stake and will vigorously litigate this action to recover its losses. *See In re Milestone Scientific Sec. Litig.*, 183 F.R.D. 404, 416 (D.N.J. 1998) (Plaintiff's "financial stake in the litigation provides an adequate incentive for [Plaintiff] to vigorously prosecute the action."). Moreover, Movant has retained counsel who, as shown below, are experienced in litigating lawsuits such as the Related Actions and Movant will submit its choice of counsel to the Court for approval. Therefore, Movant is an adequate representative for the Class.

Further, as detailed in Movant's Joint Declaration, Hopkins Decl., Ex. E, the GE Investor Group is comprised of sophisticated investors with substantial experience investing in capital markets that are committed to managing the Related Actions. *Id*. ¶¶ 4-7. For example, Mr. Karplus is a retired oil industry executive with a Master of Business Administration ("MBA") degree from

14

the University of Chicago. *Id.* at ¶5. Similarly, Mr. Heckman is a retired United States Army Colonel with an MBA from the Fuqua School of Business at Duke University. *Id.* at ¶6. The four members of the GE Investor Group have a combined ***125 years of investing experience*** and are precisely the type of sophisticated lead plaintiff Congress intended to lead securities class actions when it enacted the PSLRA.

Moreover, before moving for lead plaintiff, the members of the GE Investor Group held a joint call where they all discussed their duties under the PSLRA and commitment to vigorously litigating the Related Actions. In order to effectively manage the litigation, the GE Investor Group has agreed to hold calls, at least quarterly, to discuss any developments in the Related Actions. *Id.* at ¶10. The GE Investor Group members have committed to provide fair and adequate representation, oversee counsel, and obtain the largest possible recovery against all culpable parties consistent with good faith and vigorous advocacy. *Id.* at ¶13. To ensure this litigation is managed effectively, they have agreed to make themselves available for any appearances, depositions, and other necessary meetings to facilitate the prosecution of the Actions. *Id.* Furthermore, while the GE Investor Group does not anticipate that any disagreements will arise in the process of making decisions, they agree that, in the unlikely event of a deadlock, they will proceed by presenting their respective views to a qualified independent arbitrator who has previously served as a state or federal judge and agree to be bound by any decisions made by the arbitrator. *Id.* at ¶12.

Accordingly, at this stage of the proceedings, Movant has made the preliminary showing necessary to satisfy the typicality and adequacy requirements of Rule 23 and, therefore, satisfies 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). In addition, because Movant has sustained the largest

amount of losses from Defendants' alleged wrongdoing, it is the presumptive lead plaintiff in accordance with §78u-4(a)(3)(B)(iii)(I) and should be appointed as such to lead this Action.

### III.   MOVANT'S CHOICE OF COUNSEL SHOULD BE APPROVED

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v), the PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the Court's approval. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with the lead plaintiff's selection only when necessary to "protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa). Here, Movant has selected and retained Levi & Korsinsky as proposed Lead Counsel and Kuznicki Law as additional counsel for the Class.

As set forth in the accompanying firm résumés (Hopkins Decl. Ex. D), Levi & Korsinsky and Kuznicki Law are highly accomplished firms which have recovered many multi-million dollar recoveries for investors. As a result, the members of Levi & Korsinsky and Kuznicki Law have extensive experience in successfully prosecuting complex securities class actions such as these and are well-qualified to represent the Class. Thus, this Court may be assured that in the event that the instant Motion is granted, the members of the Class will receive the highest caliber of legal representation.

### CONCLUSION

For all the foregoing reasons, Movant respectfully requests that the Court: (1) consolidate the Related Actions; (2) appoint the GE Investor Group as Lead Plaintiff on behalf the Class; (3) approve the GE Investor Group's selection of counsel—Levi & Korsinsky as Lead Counsel and Kuznicki Law as additional counsel; and (4) grant such other and further relief as the Court may deem just and proper.

DATED: April 2, 2019                     Respectfully Submitted,

**LEVI & KORSINSKY, LLP**

_/s/ Shannon L. Hopkins_
Shannon L. Hopkins (SH-1887)
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel.: (203) 992-4523
Fax: (212) 363-7171
Email: shopkins@zlk.com

_Counsel for Movant and [Proposed] Lead Counsel
for the Class_

**KUZNICKI LAW PLLC**
Daniel Kuznicki
445 Central Avenue, Suite 344
Cedarhurst, NY 15516
Tel.: (347) 696-1134
Fax: (347) 348-0967
Email: dk@kclasslaw.com

_Additional Counsel for Movant and [Proposed]
Additional Counsel for the Class_

## **CERTIFICATE OF SERVICE**

I, Shannon L. Hopkins, hereby certify that this document was filed through the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on this 2nd day of April, 2019.

*/s/Shannon L. Hopkins*
Shannon L. Hopkins