UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EZRA BIRNBAUM, individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>GENERAL ELECTRIC COMPANY and H. LAWRENCE CULP, JR.<br><br>　　　　　　Defendants. | No. 1:19-cv-01013-DLC |
| SHEET METAL WORKERS LOCAL 17 TRUST FUNDS, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>GENERAL ELECTRIC COMPANY, JOHN L. FLANNERY, RUSSELL STOKES, and JAMIE S. MILLER,<br><br>　　　　　　Defendants. | No. 1:19-cv-01244-DLC |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEKALB COUNTY PENSION FUND FOR (1) CONSOLIDATION; (2) APPOINTMENT AS LEAD PLAINTIFF; AND (3) APPROVAL OF LEAD COUNSEL**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................... 1

FACTUAL BACKGROUND ...................................................................................................... 3

ARGUMENT .................................................................................................................................6

I. THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES .....................6

II. DEKALB SHOULD BE APPOINTED LEAD PLAINTIFF FOR THE CLASS ..............8

        A. The PSLRA's Provisions Concerning The Appointment Of A Lead Plaintiff ....... 8

        B. Under the PSLRA, DeKalb Should Be Appointed Lead Plaintiff .......................... 9

                1. DeKalb Filed a Timely Motion ................................................................... 9

                2. DeKalb Has the Largest Financial Interest in the Relief Sought by the Class ................................................................................................... 10

                3. DeKalb Meets Rule 23's Typicality and Adequacy Requirements .......... 10

III. DEKALB'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL SHOULD BE APPROVED .............................................................................................13

CONCLUSION............................................................................................................................ 15

i

## TABLE OF AUTHORITIES

**Cases**                                                                                                                                               **Page(s)**

*Baughman v. Pall Corp.*,
   250 F.R.D. 121 (E.D.N.Y. 2008) ................................................................................ 8, 9, 10

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
   252 F.R.D. 188 (S.D.N.Y. 2008) ................................................................................ 6, 11, 12

*In re Gen. Elec. Sec. Litig.*,
   No. 09 Civ. 1951 (DC),
   2009 WL 2259502 (S.D.N.Y. July 29, 2009) ............................................................. 10, 13

*In re Gentiva Sec. Litig.*,
   281 F.R.D. 108 (E.D.N.Y. 2012) ................................................................................ 1

*Hom v. Vale, S.A.*,
   No. 1:15-cv-9539-GHW,
   2016 WL 880201 (S.D.N.Y. Mar. 7, 2016) ............................................................... 1, 8

*BD ex rel. Jean Doe v. DeBuono*,
   193 F.R.D. 117 (S.D.N.Y. 2000) ............................................................................... 7

*Kaplan v. Gelfond*,
   240 F.R.D. 88 (S.D.N.Y. 2007) ................................................................................ 6

*Kokkinis v. Aegean Marine Petroleum Network, Inc.*,
   No. 11 Civ. 0917 (BSJ) (JCF),
   2011 WL 2078010 (S.D.N.Y. May 19, 2011) ........................................................... 12

*Leibs v. Supreme Indus., Inc.*,
   No. 2:16-cv-08230-CAS(SSx),
   2017 WL 457183 (C.D. Cal. Jan. 31, 2017) ............................................................. 9

*Malcolm v. Nat'l Gypsum Co.*,
   995 F.2d 346 (2d Cir. 1993) ...................................................................................... 6

*In re Millennial Media, Inc. Sec. Litig.*,
   87 F. Supp. 3d 563 (S.D.N.Y. 2015) ......................................................................... 7

*In re Olsten Corp. Sec. Litig.*,
   3 F. Supp. 2d 286 (E.D.N.Y. 1998) .......................................................................... 10

*Pinkowitz v. Elan Corp., PLC*,
   No. 02 Civ. 865 (WK),
   2002 WL 1822118 (S.D.N.Y. July 29, 2002) ............................................................ 7

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*,
   275 F.R.D. 187 (S.D.N.Y. 2011) ..................................................................................12

*Pompano Beach Police & Firefighters' Ret. Sys. v. Comtech Telecomms. Corp.*,
   No. CV 09-3007 (SJF) (AKT),
   2010 WL 3924862 (E.D.N.Y. Aug. 17, 2010)...............................................................11

*Quan v. Advanced Battery Techs., Inc.*,
   No. 11 Civ. 2279 (CM),
   2011 WL 4343802 (S.D.N.Y. Sept. 9, 2011)..................................................................11

*Reitan v. China Mobile Games & Entm't Grp., Ltd.*,
   68 F. Supp. 3d 390 (S.D.N.Y. 2014)..............................................................................13

*In re Tronox, Inc. Sec. Litig.*,
   262 F.R.D. 338 (S.D.N.Y. 2009) ................................................................................6, 8

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
   780 F.3d 597 (4th Cir. 2015) .........................................................................................14

**Statutes**

15 U.S.C. § 78u-4 ............................................................................................... 2, 3, 6, 8, 9, 10

**Other Authorities**

Fed. R. Civ. P. 42(a) ...............................................................................................................2, 6

Fed. R. Civ. P. 23(a)(4)............................................................................................................11

DeKalb County Pension Fund [1] ("DeKalb") respectfully submits this memorandum of law pursuant to § 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), in support of its motion for the entry of an order (1) consolidating the above-captioned actions (the "Actions");[2] (2) appointing DeKalb as Lead Plaintiff for the consolidated Actions; and (3) approving DeKalb's selection of the law firm of Faruqi & Faruqi, LLP (the "Faruqi Firm") as Lead Counsel.

## PRELIMINARY STATEMENT

Presently pending in this District are the above-captioned Actions brought on behalf of a putative class (the "Class") of investors who purchased or otherwise acquired GE securities from December 27, 2017 through October 29, 2018, both dates inclusive, ("Class Period")[3] seeking to

---

[1]  All internal citations and quotations are omitted, and all emphases are added unless otherwise noted.

[2]  There are two pending related actions. The first-filed action commenced on February 1, 2019 is *Birnbaum v. General Electric Company, et al.*, No. 1:19-cv-01013 (the "*Birnbaum* Action"). The second-filed action is *Sheet Metal Workers Local 17 Trust Funds v. General Electric Company, et al.*, No. 1:19-cv-01244 (the "*Sheet Metal* Action"). Both Actions name General Electric Company ("GE" or the "Company") as a defendant. Compl. ¶ 61, *Birnbaum* Action, ECF No. 1 ("*Birnbaum* Compl."); Compl. ¶ 22, *Sheet Metal* Action, ECF No. 1 ("*Sheet Metal* Compl."). The *Birnbaum* Action also names H. Lawrence Culp, Jr. ("Culp"), GE's CEO and Chairman, as an individual defendant. *Birnbaum* Compl. ¶ 62. The *Sheet Metal* Action also names John L. Flannery, GE's former CEO and Chairman, as an individual defendant. On October 1, 2018, it was announced that the Board of Directors had unanimously voted him out and replaced him with Culp. *Sheet Metal* Compl. ¶ 23. Jamie S. Miller, GE's Senior Vice President and Chief Financial Officer, and Russell Stokes, CEO and President of GE Power and Senior Vice President of GE, as individual defendants. *Sheet Metal* Compl. ¶¶ 24-26.

[3]  The class is defined differently in each action. The *Birnbaum* Action is brought on behalf of "a class consisting of all persons other than Defendants who purchased GE securities from October 12, 2018 through October 29, 2018, inclusive[.]" *Birnbaum* Compl. ¶ 1. The *Sheet Metal* Action alleges a longer class period, December 27, 2017 to October 29, 2018, and is brought on behalf of "all those who purchased or otherwise acquired GE common stock during the Class Period and who were damaged thereby[.]" *Sheet Metal* Compl. ¶ 60. Based on the circumstances here, for the purposes of "determining a lead plaintiff . . . the longer, most inclusive class period . . . is proper[.]" *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113 (E.D.N.Y. 2012); *see Hom v. Vale, S.A.*, No. 1:15-cv-9539-GHW, 2016 WL 880201, at *4 (S.D.N.Y. Mar.

1

recover damages caused by the defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

As an initial matter, the Court must decide whether to consolidate the Actions. *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii). Pursuant to Rule 42(a)(2) of the Federal Rules of Civil Procedure, the Court may consolidate actions before it that involve a single common question of law or fact. Fed. R. Civ. P. 42(a)(2). The Actions may be consolidated as they allege violations of §§ 10(b) and 20(a) of the Exchange Act. The Actions also allege claims involving substantially similar facts against the Company and certain of its officers. As the Actions raise common issues of fact and law, and consolidation will be more efficient for the Court and the parties, consolidation of the Actions is appropriate.

With respect to the appointment of a lead plaintiff to oversee the consolidated Actions, Congress established a presumption in the PSLRA that requires the Court to appoint the most adequate plaintiff as the Lead Plaintiff for the Actions "as soon as practicable[.]" 15 U.S.C. § 78u-4(a)(3)(B)(ii). The most adequate plaintiff is the person who has the "largest financial interest" in the litigation and who also satisfies the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure for class representatives. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).

With losses of approximately $3,704,737.96, DeKalb, to the best of counsel's knowledge, has the largest financial interest in the litigation of any movant. DeKalb also satisfies Rule 23's typicality and adequacy requirements. DeKalb's claims are typical of the Class's claims because

---

7, 2016) (collecting cases, and finding the "use of the longer, more inclusive class period" proper for the purpose of a lead plaintiff motion). DeKalb's losses have been calculated under the more inclusive class period that begins on December 27, 2017.

2

it suffered losses on its GE investment as a result of the defendants' allegedly false and misleading statements. Further, DeKalb has no conflict with the Class and will adequately protect the Class's interests given its significant stake in the litigation and its conduct to date in prosecuting the litigation, which includes undertaking the careful deliberation required to decide to seek appointment as lead plaintiff, the submission of the requisite certification, and the selection of experienced class counsel. Accordingly, DeKalb is the presumptive Lead Plaintiff.

If appointed Lead Plaintiff, DeKalb is entitled to select, subject to the Court's approval, Lead Counsel to represent the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). DeKalb has engaged the Faruqi Firm for this purpose. The Faruqi Firm is an appropriate selection to serve as Lead Counsel because it has substantial securities class action experience.

For the reasons summarized above and those explained more fully below, DeKalb's motion should be granted in its entirety.

## FACTUAL BACKGROUND

GE is a 126-year old industrial conglomerate with a number of primary business units, including Lighting, Aviation, Healthcare, Power, and Capital. *Sheet Metal* Compl. ¶ 27. The Company is headquartered in Boston, Massachusetts. *Sheet Metal* Compl. ¶ 22; *Birnbaum* Compl. ¶ 61. The Company's stock trades on the New York Stock Exchange under the ticker symbol "GE". *Sheet Metal* Compl. ¶ 61; *Birnbaum* Compl. ¶ 61.

The Class Period begins on December 27, 2017, when Reuters published an article titled *In Pakistan, Questions Raised over GE's Flagship Power Turbines*, in which Reuters reported that GE's "flagship gas turbines ran into problems in Pakistan earlier this year, leading to delays and lengthy outages at three newly built power stations." *Sheet Metal* Compl. ¶ 30. GE responded quickly to this article by issuing a statement to Reuters denying that there were any systemic design or structural problems with the turbines, claiming that "every commercial HA

3

site today is demonstrating exceptional performance levels for both output and efficiency." *Sheet Metal* Compl. ¶ 31. Specific to GE Power's gas turbines running in Pakistan, GE represented, "We've encountered and communicated openly about launch challenges and readily resolved issues during this time. It's important to note that challenges are common with power plants of this size and complexity during the commissioning and early operations phase." *Id.* Throughout the Class Period, Defendants issued false and/or misleading statements denying any problems with and/or downplaying any problems with its H-Class turbines as minor and easily fixable. *Sheet Metal* Compl. ¶¶ 32 - 43.

The Actions also allege that during the Class Period, Defendants misrepresented the true value of goodwill assets attributable to GE's Power division, including those associated with the acquisition of the power subsidiary from the French company Alstom. *Sheet Metal* Compl. ¶ 5; *Birnbaum* Compl. ¶¶ 3-15. The Actions allege that the Alstom acquisition was a disaster and that GE overpaid at the time that demand was beginning to wane in what had become an oversupplied global power market. Despite GE Power's earnings and outlook deteriorating substantially throughout 2017, the Company's Power segment's goodwill was overvalued. *Sheet Metal* Compl. ¶ 5; *Birnbaum* Compl. ¶¶ 10-11. Then, in the second quarter of its 2018 fiscal year, GE effected an "interim revision" of GE Power's goodwill in the amount of $2.1 billion. *Birnbaum* Compl. ¶ 16. Notwithstanding this atypical early revision, only three months later, in September 2018, GE further assessed GE Power's goodwill and decided to write-off almost all the remaining $23.2 billion of accrued goodwill (the "GE Power Charge"). *Birnbaum* Compl. ¶¶ 17-18.

The truth began to emerge on September 19, 2018, when defendant Stokes published an article on LinkedIn disclosing at the very end of a long post that the Company had "identified an

4

issue that we expect to impact our HA units. It involves an oxidation issue that affects the lifespan of a single blade component." *Sheet Metal* Compl. ¶ 42. Despite the disclosure, defendant Stokes sought to minimize the problem, claiming that "we have identified a fix and have been working proactively with HA operators to address impacted turbines." *Id.* Defendant Stokes positively touted GE Power's turbines by representing that the "minor adjustments that we need to make do not make the HA any less of a record setting turbine – they are meeting – and in many cases exceeding – their performance goals at every customer site today." *Id.* On October 1, 2018, GE announced that Culp would succeed Flannery as GE's CEO. *Sheet Metal* Compl. ¶ 49; *Birnbaum* Compl. ¶ 20. At the same time and for the first time, GE disclosed that it would likely take the $23 billion GE Power Charge, although it indicated that the goodwill impairment "charge is not yet finalized and remains subject to review." *Birnbaum* Compl. ¶ 21.

The *Birnbaum* Action also alleges that before the October 1, 2018 announcement of the GE Power Charge, GE disclosed that it was the subject of an SEC investigation relating to the Company's revenue recognition practices and internal controls over financial reporting related to long-term service agreements. *Birnbaum* Compl. ¶ 24. Shortly after the October 1, 2018 announcement, GE learned that the SEC had expanded its investigation to include GE's treatment of goodwill and that the Department of Justice had initiated a criminal investigation into GE's accounting practices (collectively, the "Expanded Investigation") (*Birnbaum* Compl. ¶¶ 27-29), but starting with public statements on October 12, 2018, failed to disclose the Expanded Investigation. *Birnbaum* Compl. ¶¶ 30-35, 41-46.

On October 30, 2018, GE made several announcements. In Culp's first quarterly report with the Company since taking over as CEO, GE confirmed a massive goodwill impairment charge of $23 billion related to GE Power, disclosed that the SEC's investigation related to the

5

Company's accounting had expanded to include the goodwill impairment write down and that the DOJ initiated a criminal investigation. *Sheet Metal* Compl. ¶ 50; *Birnbaum* Compl. ¶ 70. GE also slashed its dividend to 1 cent and announced intentions to reorganize its Power business. *Sheet Metal* Compl. ¶¶ 52-56; *Birnbaum* Compl. ¶¶ 36-40.

In reaction to these disclosures, GE's stock price fell $0.98 per share from $11.16 per share on October 29, 2018, to $10.18 per share on October 30, 2018. *Sheet Metal* Compl. ¶ 57; *Birnbaum* Compl. ¶¶ 53-55, 78-81.

## ARGUMENT

### I. THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

The PSLRA provides that, "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," the court shall not determine the most adequate plaintiff "until after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii) (the PSLRA advises courts to make the decision regarding the appointment of the lead plaintiff for the consolidated action "[a]s soon as practicable after [the consolidation] decision is rendered").

Consolidation is appropriate when the actions before the court "involve *a* common question of law *or* fact." *See* Fed. R. Civ. P. 42(a); *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (consolidating securities class actions); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (same). Differences in causes of action, defendants, legal issues, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interest of judicial economy served by consolidation. *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007). "Neither Rule 42 nor the

6

PSLRA demands that actions be identical before they may be consolidated." *Pinkowitz v. Elan Corp., PLC*, No. 02 Civ. 865 (WK), 2002 WL 1822118, at *3 (S.D.N.Y. July 29, 2002). Indeed, "[i]t is well settled that *even one substantial common question of law or fact is enough for commonality under Rule 42(a)*." *BD ex rel. Jean Doe v. DeBuono*, 193 F.R.D. 117, 141 (S.D.N.Y. 2000) (citing Wright & Miller, Federal Practice and Procedure § 2384 at 451 (2d ed. 1994)).

The Actions at issue here clearly involve common questions of fact **and** law. The Actions assert claims under the Exchange Act on behalf of investors who purchased GE securities during the Class Period. The Actions allege that the fraud-on-the-market presumption of reliance is applicable to GE stock, and, in the alternative, that the *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972) presumption of reliance applies. The Actions allege a substantial common wrongdoing, namely that the defendants issued materially false and misleading statements regarding the SEC and DOJ investigations into the Company (*see Birnbaum* Compl. ¶¶ 63- 77; *Sheet Metal* Compl. ¶¶ 11, 52) and, in the *Sheet Metal* Action, that (i) the design and technology of GE Power's flagship H-Class gas turbines were structurally flawed as they were plagued with an oxidation problem that caused the blades in gas turbines to fail; (ii) GE Power's goodwill was materially overstated; and (iii) the Company lacked adequate internal and financial controls. *Sheet Metal* Compl. ¶¶ 30-41. The *Birnbaum* and *Sheet Metal* complaints allege that defendants revealed the full truth on October 30, 2018. *Birnbaum* Compl. ¶¶ 78-81; *Sheet Metal* Compl. ¶¶ 52-59. *See* Factual Background, *supra*.

Consolidation of the Actions is therefore appropriate. *See In re Millennial Media, Inc. Sec. Litig.*, 87 F. Supp. 3d 563, 568 (S.D.N.Y. 2015) (consolidating securities cases "[a]lthough the Mississippi Complaint name[d] other defendants and include[d] additional claims"); *Hom*,

2016 WL 880201, at *2 ("Although there are minor differences in the allegations and the putative class periods, the cases nevertheless present common questions of law and fact.").

## II.    DEKALB SHOULD BE APPOINTED LEAD PLAINTIFF FOR THE CLASS

### A.    The PSLRA's Provisions Concerning The Appointment Of A Lead Plaintiff

The PSLRA governs the appointment of a lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §§ 78u-4(a)(1) & (a)(3)(B). It provides that within 20 days of the filing of the first such action, the plaintiff in that action is required to publish notice in a widely circulated business-oriented publication or wire service, informing class members of their right to move the Court, within 60 days of the publication, for appointment as lead plaintiff. *See Baughman v. Pall Corp.*, 250 F.R.D. 121, 125 (E.D.N.Y. 2008) (citing 15 U.S.C. § 78u-4(a)(3)(A)).

Under 15 U.S.C. § 78u-4(a)(3)(B)(i), the Court is then to consider any motion made by class members and is to appoint as lead plaintiff the movant that the Court determines to be "most capable of adequately representing the interests of class members[.]" Further, the PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the person that:

> (aa) has either filed the complaint or made a motion in response to a notice [published by a complainant]; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *Baughman*, 250 F.R.D. at 125 (describing the PSLRA's process for determining the "most adequate plaintiff"); *Tronox*, 262 F.R.D. at 343-44 (same).

Once it is determined who among the movants seeking appointment as lead plaintiff is the presumptive lead plaintiff, the presumption can be rebutted only upon proof by a class member that the presumptive lead plaintiff: "(aa) will not fairly and adequately protect the

interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Baughman*, 250 F.R.D. at 125.

### B. Under the PSLRA, DeKalb Should Be Appointed Lead Plaintiff

As discussed below, DeKalb should be appointed Lead Plaintiff because all of the PSLRA's procedural hurdles have been satisfied, DeKalb holds the largest financial interest of any movant, and otherwise satisfies Rule 23's typicality and adequacy requirements.

#### 1. DeKalb Filed a Timely Motion

Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the first plaintiff to file a complaint was required to publish notice within twenty (20) days of its filing. Here, counsel for first-filed plaintiff Ezra Birnbaum published notice of the lead plaintiff deadline via *PR Newswire* on February 1, 2019. *See* Ex. A[4]; *see also Leibs v. Supreme Indus., Inc.*, No. 2:16-cv-08230-CAS(SSx), 2017 WL 457183, at *2 (C.D. Cal. Jan. 31, 2017) (considering publication of notice on *PR Newswire* to be sufficient to satisfy the PSLRA's notice requirement). Thus, any member of the proposed Class was required to seek to be appointed Lead Plaintiff within 60 days after publication of this Action's notice, *i.e.*, on or before April 2, 2019. Thus, DeKalb's motion is timely filed. Additionally, pursuant to 15 U.S.C. § 78u-4(a)(2), DeKalb timely signed and submitted the requisite certification, identifying all of its relevant GE trades during the Class Period, and detailing DeKalb's suitability to serve as Lead Plaintiff in this case. *See* Ex. B. The PSLRA's procedural requirements have therefore been met.

---

[4] All Exhibits referenced herein are annexed to the Declaration of James M. Wilson, Jr. in Support of DeKalb's Motion for (1) Consolidation; (2) Appointment as Lead Plaintiff; and (3) Approval of Lead Counsel, dated April 2, 2019.

### 2. DeKalb Has the Largest Financial Interest in the Relief Sought by the Class

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" for lead plaintiff purposes is the person with the largest financial interest in the relief sought by the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

Although the PSLRA is silent as to any definitive methodology courts are to use in determining which movant has the largest financial interest in the relief sought, courts in this Circuit have often looked to four factors in the inquiry: (1) the number of shares purchased by the movant during the class period; (2) the number of net shares purchased by the movant during the class period; (3) the total net funds expended by the movant during the class period; and (4) the approximate losses suffered by the movant. *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *see also Baughman*, 250 F.R.D. at 125; *In re Gen. Elec. Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 WL 2259502, at *3 (S.D.N.Y. July 29, 2009). Courts have placed the most emphasis on the last of the four factors: the approximate loss suffered by the movant. *See, e.g.*, *Baughman*, 250 F.R.D. at 125; *Gen. Elec.*, 2009 WL 2259502, at *4.

During the Class Period, DeKalb purchased 572,119 total shares and 572,119 net shares of GE common stock, expended $8,349,621.82 in net funds, and suffered losses of approximately $3,704,737.96 when calculated using a last in, first out ("LIFO") and first in, first out ("FIFO") methodology. *See* Ex. C. DeKalb is presently unaware of any other movant with a larger financial interest in the outcome of this litigation.

### 3. DeKalb Meets Rule 23's Typicality and Adequacy Requirements

In addition to possessing the largest financial interest in the outcome of the litigation, the PSLRA also requires that the lead plaintiff satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u-4(a)(3)(B). When assessing a potential lead

plaintiff, only Rule 23(a)'s typicality and adequacy requirements are relevant.  *See, e.g.*, *Pompano Beach Police & Firefighters' Ret. Sys. v. Comtech Telecomms. Corp.*, No. CV 09-3007 (SJF) (AKT), 2010 WL 3924862, at *5 (E.D.N.Y. Aug. 17, 2010); *see also Blackmoss*, 252 F.R.D. at 191 ("At this stage of the litigation, the moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met.").

Typicality is established where each class member's claim "arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Id.* (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).

DeKalb's claims are clearly typical of the Class's claims.  DeKalb purchased GE shares during the Class Period, suffered damages as a result of the Company's false and misleading statements, and possesses claims against GE and certain of its officers under the federal securities laws.  Because the factual and legal bases of DeKalb's claims are similar, if not identical, to those of the Class's claims, DeKalb necessarily satisfies the typicality requirement.  *See Quan v. Advanced Battery Techs., Inc.*, No. 11 Civ. 2279 (CM), 2011 WL 4343802, at *3 (S.D.N.Y. Sept. 9, 2011) (finding movant typical where "he suffered losses as a result of [the company's] false and misleading statements during the same period as the other movants, plaintiffs, and potential class members, and [] he is alleging violations of the same provisions of the [Exchange Act], against the same defendants as the other parties").

With respect to adequacy, Rule 23(a)(4) requires that the representative party will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  Adequate representation will be found if able and experienced counsel represent the proposed representative, and the proposed representative has no fundamental conflicts with the interests of

11

...

...

the class as a whole. *See Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 190 (S.D.N.Y. 2011) ("In considering the adequacy of a proposed lead plaintiff, a court must consider: (1) whether the lead plaintiff's claims conflict with those of the class; and (2) whether class counsel is qualified, experienced, and generally able to conduct the litigation."); *Gen. Elec.*, 2009 WL 2259502, at *5 (Plaintiff "satisfies the adequacy requirement because its interests are aligned with those of the putative class, and it has retained competent and experienced counsel.").

As evidenced by the representations in its certification, DeKalb's interests are perfectly aligned with—and by no means antagonistic to—the Class. *See Kokkinis v. Aegean Marine Petroleum Network, Inc.*, No. 11 Civ. 0917 (BSJ) (JCF), 2011 WL 2078010, at *2 (S.D.N.Y. May 19, 2011) (movant's certification evidenced adequacy to serve as lead plaintiff); *Blackmoss*, 252 F.R.D. at 191 (same). Moreover, DeKalb is an experienced class representative, having helped to recover many millions of dollars for class members as a Lead Plaintiff in prior cases. DeKalb was a Co-Lead Plaintiff in *In re Maxim Integrated Products, Inc., Securities Litigation*, Civil Action No. C-08-00832-PVT (N.D. Cal.), in which $173 million was recovered for the class. DeKalb was also sole Lead Plaintiff in *In re ArthroCare Corporation Securities Litigation,* Civil Action No. C-08-00574-SS (W.D. Tex.), in which $74 million was recovered for the class.

DeKalb has selected and retained highly competent counsel to litigate the claims on behalf of itself and the Class. As explained below in Section III, the Faruqi Firm is highly regarded for its experience, knowledge, and ability to conduct complex securities class action litigation. In fact, two of the partners at the Faruqi Firm, Robert Killorin and James Wilson, successfully represented DeKalb in the prior securities class actions *ArthroCare* and *Maxim*,

mentioned above. *See* Ex. D. Consequently, DeKalb is more than adequate to represent the Class and has chosen competent counsel.

In light of the foregoing, DeKalb respectfully submits that it is the presumptive Lead Plaintiff and should be appointed Lead Plaintiff for the consolidated Actions.

**III.     DEKALB'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL SHOULD BE APPROVED**

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the lead plaintiff is entitled to select and retain lead counsel for the Class, subject to the Court's approval. DeKalb has selected the Faruqi Firm to be Lead Counsel for the Class. The Faruqi Firm is a minority-owned and woman-owned law firm and, as reflected in the firm's resume, possesses extensive experience litigating complex class actions on behalf of plaintiffs, including securities class actions. *See* Ex. D; *see also Reitan v. China Mobile Games & Entm't Grp., Ltd.*, 68 F. Supp. 3d 390, 401 (S.D.N.Y. 2014) (appointing the Faruqi Firm as sole lead counsel and noting: "Faruqi & Faruqi has extensive experience in the area of securities litigation and class actions. The firm's resume indicates that it has litigated more than ten prominent securities class actions since its founding in 1995. Faruqi & Faruqi achieved successful outcomes in many of these cases."). For example, the Faruqi Firm has previously obtained significant recoveries for injured investors. *See, e.g.*, *In re Avalanche Biotechnologies Sec. Litig.*, No. 3:15-cv-03185-JD (N.D. Cal. 2017) (appointed as sole lead counsel in the federal action and, together with lead counsel in the parallel state action, obtained final approval of a $13 million global settlement of the state and federal actions); *Rihn v. Acadia Pharms., Inc.*, No. 3:15-cv-00575-BTM-DHB (S.D. Cal. 2017) (where, as sole lead counsel, the Faruqi Firm obtained final approval of a $2.925 million settlement); *In re Geron Corp., Sec. Litig.*, No. 3:14-CV-01424 (CRB) (N.D. Cal. 2017) (where, as sole lead counsel, the Faruqi Firm obtained final approval of a $6.25 million settlement); *In re Dynavax Techs. Corp.*

13

*Sec. Litig.*, No. 12-CV-02796 (CRB) (N.D. Cal. 2016) (where, as sole lead counsel, the Faruqi Firm obtained final approval of a $4.5 million settlement); *McIntyre v. Chelsea Therapeutics Int'l, LTD*, No. 12-CV-213-MOC-DCK (W.D.N.C. 2016) (where, as sole lead counsel, the Faruqi Firm secured the reversal of the district court's dismissal of the action at the Fourth Circuit, *see Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597 (4th Cir. 2015), and obtained final approval of a $5.5 million settlement); *In re L&L Energy, Inc. Sec. Litig.*, No. 13-CV-06704 (RA) (S.D.N.Y. 2015) (where the Faruqi Firm as co-lead counsel, secured a $3.5 million settlement); *In re Ebix, Inc. Sec. Litig.*, No. 1:11-CV-02400-RWS (N.D. Ga. 2014) (where the Faruqi Firm, as sole lead counsel for the class, secured a $6.5 million settlement); *Shapiro v. Matrixx Initiatives, Inc.*, No. CV-09-1479-PHX-ROS (D. Ariz. 2013) (where the Faruqi Firm, as co-lead counsel for the class, secured a $4.5 million settlement); *In re United Health Grp. Inc. Derivative Litig.*, Case No. 27 CV 06-8065 (Minn. 4th Jud. Dist. 2009) (where the Faruqi Firm, as co-lead counsel, obtained a substantial recovery for the benefit of the Company and negotiated important corporate governance reforms designed to make the nominal defendant corporation a model of responsibility and transparency); *In re Tellium Inc. Sec. Litig.*, No. 02-CV-5878 (FLW) (D.N.J. 2006) (where the Faruqi Firm, as co-lead counsel, recovered a $5.5 million settlement); *In re Olsten Corp. Sec. Litig.*, No. 97-CV-5056 (E.D.N.Y. 2005) (where the Faruqi Firm, as co-lead counsel, recovered $24.1 million for class members); *Ruskin v. TIG Holdings, Inc.*, No. 98-CV-1068 (S.D.N.Y. 2002) (where the Faruqi Firm, as co-lead counsel, recovered $3 million for the class); and *In re Purchase Pro Inc. Sec. Litig.*, No. CV-C-01-0483-JLQ (D. Nev. 2001) (where the Faruqi Firm, as co-lead counsel for the class, secured a $24.2 million settlement).

The Faruqi Firm also is currently litigating several prominent securities class actions. *See, e.g.*, *Larkin v. GoPro, Inc.*, No. 4:16-cv-06654-CW (N.D. Cal.) (where, as sole lead counsel for the class, the firm defeated defendants' motion to dismiss and is currently seeking preliminary approval of a $6.75 million settlement for class members); *Loftus v. Primero Mining Corp.*, No. 16-01034-BRO (RAOx) (C.D. Cal) (appointed as sole lead counsel for the class); *Attigui v. Tahoe Resources, Inc.*, No. 2:18-cv-01868-RFB-NJK (D. Nev.) (same); *DeSmet v. Intercept Pharmaceuticals Inc.*, No. 1:17-cv-07371-LAK (S.D.N.Y.) (same); *Khanna v. Ohr Pharmaceutical Inc.*, No. 1:18-cv-01284-LAP (S.D.N.Y.) (same); *Lee v. Synergy Pharmaceuticals, Inc.*, No. 1:18-cv-00873-AMD-VMS (E.D.N.Y.) (appointed as co-lead counsel for the class); *Smith v. CV Sciences, Inc.*, No. 2:18-cv-01602-JAD-PAL (appointed as sole lead counsel for the class).

## CONCLUSION

For the foregoing reasons, DeKalb respectfully requests that the Court (1) consolidate the Actions; (2) appoint DeKalb as Lead Plaintiff for the consolidated Actions; (3) approve DeKalb's selection of the Faruqi Firm as Lead Counsel for the Class; and (4) grant such other relief as the Court may deem just and proper.

Dated: April 2, 2019                                                          Respectfully submitted,

**FARUQI & FARUQI, LLP**

By: */s/ James M. Wilson, Jr.*

Nadeem Faruqi
Lubna Faruqi
Robert W. Killorin (*Pro Hac Vice motion to be made*)
James M. Wilson, Jr.
685 Third Avenue, 26th Floor
New York, NY 10017
Ph: (212) 983-9330
Fax: (212) 983-9331

15

E-mail: nfaruqi@faruqilaw.com
lfaruqi@faruqilaw.com
rkillorin@faruqilaw.com
jwilson@faruqilaw.com

*Attorneys for [Proposed] Lead Plaintiff DeKalb County Pension Fund and [Proposed] Lead Counsel for the Class*