**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE GENERAL ELECTRIC SECURITIES LITIGATION | 19 Civ. 1013 (DLC) <br><br> <u>**ORAL ARGUMENT REQUESTED**</u> |

<u>**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'**</u>
<u>**MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**</u>

LATHAM & WATKINS LLP
Miles N. Ruthberg
Blake T. Denton
885 Third Avenue
New York, New York 10022
(212) 906-1200

Sean M. Berkowitz (*pro hac vice*)
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
(312) 876-7700

William J. Trach (*pro hac vice*)
200 Clarendon Street
Boston, Massachusetts 02116
(617) 948-6000

Sarah A. Tomkowiak (*pro hac vice*)
555 Eleventh Street NW
Washington, D.C. 20004
(202) 637-2200

*Attorneys for Defendants*

November 8, 2019

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT .........................................................................................................1

ARGUMENT .................................................................................................................................2

I.      THE SAC DOES NOT PLEAD ANY FALSE STATEMENT OR OMISSION ................2

      A.     Defendants' Statements Regarding Goodwill Were Not False Opinions ...............3

      B.     Defendants' Statements Regarding H-Class Turbines Were Not False Or Misleading........................................................................................................7

II.     THE SAC DOES NOT PLEAD A STRONG INFERENCE OF SCIENTER .................10

      A.     Plaintiff Has Not Pled Recklessness Regarding Goodwill ...................................10

      B.     Plaintiff Has Not Pled Recklessness Regarding H-Class Turbines ......................12

III.    THE SAC DOES NOT PLEAD LOSS CAUSATION....................................................14

IV.    THE SAC DOES NOT PLEAD A SECTION 20(A) CLAIM .........................................15

CONCLUSION.............................................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Central States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*,
543 F. App'x 72 (2d Cir. 2013) ...................................................................................................14

*CLAL Finance Batucha Investment Management, Ltd. v. Perrigo Co.*,
2010 WL 4177103 (S.D.N.Y. Oct. 7, 2010).............................................................................5, 6

*Cortina v. Anavex Life Scis. Corp.*,
2016 WL 7480415 (S.D.N.Y. Dec. 29, 2016) ...........................................................................12

*Freudenberg v. E\*Trade Financial Corp.*,
712 F. Supp. 2d 171 (S.D.N.Y. 2010)...........................................................................................3

*Harris v. AmTrust Fin. Servs., Inc.*,
135 F. Supp. 3d 155 (S.D.N.Y. 2015), *aff'd*, 649 F. App'x 7 (2d Cir. 2016)...........................4

*Ho v. Duoyuan Glob. Water, Inc.*,
887 F. Supp. 2d 547 (S.D.N.Y. 2012)...........................................................................................3

*In re Apple Computer, Inc.*,
127 F. App'x 296 (9th Cir. 2005) ...............................................................................................13

*In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*,
2018 WL 2382600 (S.D.N.Y. May 24, 2018) ..........................................................................5, 6

*In re CRM Holdings, Ltd. Sec. Litig.*,
2012 WL 1646888 (S.D.N.Y. May 10, 2012) ............................................................................15

*In re DRDGOLD Ltd. Sec. Litig.*,
472 F. Supp. 2d 562 (S.D.N.Y. 2007).........................................................................................14

*In re Ferrellgas Partners, L.P., Sec. Litig.*,
2018 WL 2081859 (S.D.N.Y. Mar. 30, 2018) ...........................................................................12

*In re Inv. Tech. Grp., Inc. Sec. Litig.*,
251 F. Supp. 3d 596 (S.D.N.Y. 2017).........................................................................................13

*In re Lululemon Sec. Litig.*,
14 F. Supp. 3d 553 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015) ......................8, 9

*In re Openwave Sys. Sec. Litig.*,
528 F. Supp. 2d 236 (S.D.N.Y. 2007).........................................................................................11

*In re Petrobras Sec. Litig.*,
  862 F.3d 250 (2d Cir. 2017).........................................................................................14

*In re PXRE Grp., Ltd., Sec. Litig.*,
  600 F. Supp. 2d 510 (S.D.N.Y.), *aff'd sub nom. Condra v. PXRE Grp. Ltd.*,
  357 F. App'x 393 (2d Cir. 2009) .................................................................................10

*In re Rockwell Med., Inc. Sec. Litig.*,
  2018 WL 1725553 (S.D.N.Y. Mar. 30, 2018) ..............................................................9

*Janbay v. Canadian Solar, Inc.*,
  2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012) ............................................................14

*Janus Capital Group, Inc. v. First Derivative Traders*,
  564 U.S. 135 (2011).......................................................................................................3

*Lentell v. Merrill Lynch & Co.*,
  396 F.3d 161 (2d Cir. 2005).........................................................................................14

*Lucescu v. Zafirovski*,
  2018 WL 1773134 (S.D.N.Y. Apr. 11, 2018)....................................................... *passim*

*Meyer v. Concordia Int'l Corp.*,
  2017 WL 4083603 (S.D.N.Y. July 28, 2017) ..............................................................15

*Monroe Cty. Employees' Ret. Sys. v. S. Co.*,
  2019 WL 3956139 (N.D. Ga. Aug. 22, 2019) ..............................................................14

*Okla. Firefighters Pension & Ret. Sys. v. Xerox Corp.*,
  300 F. Supp. 3d 551 (S.D.N.Y. 2018), *aff'd sub nom. Ark. Pub. Emps. Ret.
  Sys. v. Xerox Corp.*, 771 F. App'x 51 (2d Cir. 2019) ...................................................7

*Plumbers & Pipefitters Nat'l Pension Fund v. Orthofix Int'l N.V.*,
  89 F. Supp. 3d 602 (S.D.N.Y. 2015)............................................................................11

*Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of
  Commerce*,
  694 F. Supp. 2d 287 (S.D.N.Y. 2010)..........................................................................11

*Simpson v. Wells Fargo Bank*,
  2016 WL 393544 (S.D.N.Y. Feb. 1, 2016).....................................................................7

*Waters v. Gen. Elec. Co.*,
  2010 WL 3910303 (S.D.N.Y. Sept. 29, 2010), *aff'd*, 447 F. App'x 229
  (2d Cir. 2011)...............................................................................................................14

*Wyche v. Advanced Drainage Sys., Inc.*,
    2017 WL 971805 (S.D.N.Y. Mar. 10, 2017), *aff'd*, 710 F. App'x 471
    (2d Cir. 2017)........................................................................................................11

## PRELIMINARY STATEMENT[1]

Defendants' Motion to Dismiss (the "Motion") showed that, despite Plaintiff's ample opportunity to investigate and amend, its claims still fail on multiple grounds.  Plaintiff's Opposition does nothing to cure—and instead concedes—the central shortcomings of the SAC.

*First*, the Opposition concedes (as it must) that GE's goodwill estimates are opinion statements, but it totally fails to show that these opinions were both subjectively and objectively false.  To the contrary, with respect to subjective falsity, Plaintiff concedes that it "***does not argue that Defendants did not hold the[ir] professed belief[s]***" regarding GE's goodwill estimates.  Opp. 21 n.16.  As this Court held in *Lucescu v. Zafirovski*, Plaintiff's admitted failure to make any allegation that "actually speak[s] to" any Defendant's "state of mind when making statements about [] goodwill" mandates dismissal of its claim.  2018 WL 1773134, at *12 (S.D.N.Y. Apr. 11, 2018).  With respect to objective falsity, Plaintiff's arguments—including that GE's goodwill estimates relied on "unreasonable cash-flow" estimates, or failed to disclose that Defendants did not "ensure that the goodwill number rested on a reasonable basis"—rest on Plaintiff's own unsubstantiated speculation (as opposed to, for example, actual allegations of fraud by a former employee).  Opp. 22-23.  Plaintiff has not shown either objective or subjective falsity.

*Second*, even though Plaintiff concedes that GE was entitled to a reasonable time to investigate the H-class turbine oxidation issue, Opp. 14, the Opposition insists GE had a duty to disclose that issue sooner than it did.  But Plaintiff identifies no facts showing that oxidation will ever result in the "catastrophic" consequences for the H-class turbine that Plaintiff alleges, ¶ 3, much less that GE should have reached that conclusion at the outset.  And, the Opposition does

---

[1]    Unless otherwise indicated, capitalized terms shall have the meanings ascribed to them in the Motion (Dkt. No. 90), citations and quotations are omitted, emphasis is added, and citations to "Ex. __" refer to exhibits attached to the Declaration of Blake T. Denton, submitted with the Motion (Dkt. No. 89), and the Supplemental Declaration of Blake T. Denton, submitted herewith.

not refute the literal truth of Defendants' statements regarding GE's H-class turbines, which did not address the oxidation issue while GE's investigation was ongoing.  Under settled case law, GE was required to do no more.

*Third*, as to both of its illogical theories of fraud, Plaintiff fails entirely to establish the requisite "strong inference" of scienter as to any Defendant.  Plaintiff's Opposition quotes its own speculation and attorney argument in the SAC as if that can substitute for well-pled facts.  But Plaintiff fails completely to identify any internal emails, memoranda, presentations, documents, or other particularized facts to corroborate Plaintiff's speculative claims of fraud.  Plaintiff does not dispute that—as the Motion highlighted—the ***sole*** former employee ("FE") referenced in the SAC had no interaction with or direct knowledge regarding any of the Individual Defendants, offering only his "opinion" regarding the types of documents that they "would have" seen.  ¶ 91.  Tellingly, the Opposition's only reference to the FE is buried in a footnote.  Plaintiff's thin allegations about what Defendants "would have" known, generic motives common to all corporate executives, and the magnitude of the goodwill charge are plainly insufficient under well-settled law.

*Fourth*, Plaintiff fails adequately to allege loss causation.  Most notably, Plaintiff does not dispute that GE's stock price ***increased*** when GE first announced a potential goodwill impairment charge ***and*** when GE first disclosed the H-class turbine issue.  Plaintiff's attempts in the Opposition to explain away these price increases by arguing that the information released on those days was "mixed" with positive news, "limited," or "buried" fail to overcome this fatal flaw.  Opp. 37-38.

Defendants respectfully request that the Court dismiss the SAC with prejudice.

## <u>ARGUMENT</u>

## I.  THE SAC DOES NOT PLEAD ANY FALSE STATEMENT OR OMISSION

Plaintiff's Opposition confirms that it cannot meet its burden of pleading a single false statement regarding GE's goodwill impairment or H-class turbines.  Mot. 13-28; *see also* Ex. 3.

Further, Plaintiff concedes that each Individual Defendant cannot be held liable for statements not made by him or her, but it inaccurately states that "all conference call participants are liable for the statements made during the call, whether they were the speaker or a participant who failed to correct the misstatement." Opp. 8 n.4. Plaintiff's authority, *Freudenberg v. E*Trade Financial Corp.*, 712 F. Supp. 2d 171, 195 (S.D.N.Y. 2010), is outdated and inconsistent with the Supreme Court's subsequent decision in *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135, 147 (2011). *See Ho v. Duoyuan Glob. Water, Inc.*, 887 F. Supp. 2d 547, 572 n.13 (S.D.N.Y. 2012) (noting the "tension" between *Freudenberg* and *Janus*, and finding that "[s]ince each party is liable only for their own misstatements, *Janus* implies that each party is only liable for their own omissions as well"). Even assuming a duty to correct existed (it did not), the SAC does not plead with particularity any participant's knowledge that a speaker's statement was false.

## A. Defendants' Statements Regarding Goodwill Were Not False Opinions

Plaintiff agrees that GE's estimates of goodwill are opinion statements. Opp. 19. As such, Plaintiff must show both subjective and objective falsity, *i.e.*, that any Defendant subjectively did not believe GE's goodwill estimates at the time they were made and also an "objective standard" (such as market price) that GE should have but failed to use in determining the value of its assets. *Lucescu*, 2018 WL 1773134, at *7, 11-12. In its Opposition, Plaintiff concedes that it fails to allege subjective falsity, openly admitting that it "***does not argue that Defendants did not hold the professed belief***" regarding the goodwill estimates. Opp. 21 n.16. This concession is fatal to its claims. As this Court has held, "[b]ecause estimates of goodwill are not matters of objective fact, plaintiffs ***must allege*** that defendant [] ***did not believe*** the statements regarding goodwill." *Lucescu*, 2018 WL 1773134, at *11-12. In other words, statements regarding goodwill cannot be

3

actionable where, as here, Plaintiff fails to make any allegations that "speak to" any Defendant's "state of mind when making statements about [] goodwill."[2]  *Id.* at *12.

Plaintiff also fails entirely to plead objective falsity.  Plaintiff argues that GE should have but failed to apply the "objective" standard of "GAAP" in its goodwill estimates.  Opp. 24.  Settled law is to the contrary.  Not only is GAAP as a whole anything but "objective," *e.g.*, *Harris v. AmTrust Fin. Servs., Inc.*, 135 F. Supp. 3d 155, 171 (S.D.N.Y. 2015), *aff'd*, 649 F. App'x 7 (2d Cir. 2016) ("It is well-settled that GAAP provisions are subject to interpretation . . . ."), but its cash flow provisions (which Plaintiff fails to cite, *see* Opp. 22, 24) also specifically provide that goodwill analyses are "made under circumstances of uncertainty because the cash flows used are estimates," *see* Ex. 6, ASC 820-10-55-7.  Likewise, Plaintiff alleges that GE's goodwill balances "rested on untrue supporting facts – the cash-flow numbers," Opp. 22, but fails to provide any information regarding what those cash flow numbers were or should have been under Plaintiff's hypothetical view.  Plaintiff criticizes GE's estimates, but does not (and cannot) point to any particularized facts demonstrating fraud, and its remaining arguments do not save its claims.

*First*, challenged by Defendants to identify the specific amounts by which GAAP required GE to write down goodwill, and when, Plaintiff can only repeat its vague allegations that "material impairment[s]" were needed in each of the prior three quarters.  Opp. 25.  Plaintiff begrudgingly admits that it may have been mistaken in alleging that Q3 2018's write-down should have occurred in Q2 2018, pulling back from its earlier erroneous allegation that the two quarters' "impairment analyses use[d] the same data."  *See id.* 22 n.18; Mot. 16-17.  That does not stop Plaintiff from

---

[2]      Plaintiff's attempt to distinguish the outcome of *Lucescu* based on external economic conditions is unavailing.  Opp. 20.  The plaintiffs in *Lucescu*, like Plaintiff here, failed to plead that defendants "did not believe the statements regarding [the company's] goodwill," which made it impossible to plead subjective falsity.  2018 WL 1773134, at *12-13.

continuing to call the data "nearly identical," *see* Opp. 22, without any basis.[3]

*Second*, Plaintiff rehashes its conclusory allegations that the "same" adverse economic factors that led to impairment in Q3 2018 were already present in Q4 2017.  *Id.*; ¶¶ 459, 469, 481, 487.  Plaintiff still fails to plead any objective standard that required GE to impair goodwill by any specific time or amount, nor do these threadbare allegations show the required subjective falsity. *See* Mot. 15-18; *Lucescu*, 2018 WL 1773134, at *11-12 (rejecting argument that "the 'same circumstances' that led to the September impairment existed in May" where "[n]one of plaintiffs' contentions actually sp[oke] to [the] defendant['s] state of mind").  Indeed, the sources Plaintiff cites to support its claim, *see* Opp. 7-8, 22, instead demonstrate GE's inherently uncertain estimates as to the expected future duration and scope of the challenges facing the power market as of Q4 2017, as well as GE's plans to mitigate any negative effects.  *E.g.*, Ex. 50, Nov. 13, 2017 Tr., at 5, 14-15; Ex. 20, Q4 2017 Earnings Call Tr., at 10-12, 15-16.

Nor are the factors cited by Plaintiff—the challenging market, industry overcapacity, uncertain deal closures, and operational challenges—"identical" to the factors that ultimately caused GE's goodwill write-down, or "objective facts" like those present in *CLAL Finance Batucha Investment Management, Ltd. v. Perrigo Co.*, 2010 WL 4177103 (S.D.N.Y. Oct. 7, 2010), or *In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*, 2018 WL 2382600 (S.D.N.Y. May 24, 2018). *See* Opp. 21.  In *CLAL*, the defendant failed to write down the value of its Lehman Brothers auction rate securities, or ARS, until February 2009, even though following Lehman's September 2008 bankruptcy, "there was no longer ***any possibility*** that Lehman would revive the auction markets for these ARS." 2010 WL 4177103, at *5, 7.  Likewise, in *Chicago Bridge*, the plaintiff alleged

---

[3]      Recognizing the inadequacy of the SAC's allegations, Plaintiff now speculates only that an "approximately $3 billion impairment in Grid Solutions" was "required" in Q1 2018.  Opp. 25-26.  That number appears nowhere in the SAC, and in any event, is neither supported nor sufficient.

"objective facts that would weigh heavily, if not overwhelmingly, against the outcome that the defendants had predicted"; the company had assured investors that there were "***no*** indicators of goodwill impairment," despite "known delays."  2018 WL 2382600, at *3, 7-8.  Here, in contrast, GE "made a judgment and prediction about an uncertain outcome given the[] events," while continually warning investors of the risk of a future impairment.  *Id.* at *7; *see* Mot. 17, 20 n.10.  And, once GE realized that the challenging market and related factors would "persist longer" than initially expected, and with "deeper impact," it promptly took an impairment.  Mot. 9.

*Third*, Plaintiff's allegations of certain adverse market trends and operational challenges are (at best) "facts that cut against the representations of [GE's] goodwill" that do "not make the statements, which are statements of opinion, false or misleading."  *Lucescu*, 2018 WL 1773134, at *12; Mot. 15-19.  These allegations do not demonstrate the required subjective falsity (which Plaintiff concedes it has not pled), and also do not show objective falsity, since Plaintiff does not allege "particular (and material) facts going to the basis for the [] opinion[s]" whose omission made those opinion statements misleading.  *Lucescu*, 2018 WL 1773134, at *6.  Thus, Plaintiff fails to plead with any particularity that any part of GE's goodwill analysis did not "rest[] on a reasonable basis."  Opp. 23.  Similarly, Plaintiff fails to plead particularized facts showing "that Defendants manipulated the long-term service agreement revenue," much less a connection between any alleged manipulation and goodwill.  *Id.*; ¶¶ 380-84; Mot. 18 n.8.  Finally, regarding GE's alleged omission of the discount rate applied, Plaintiff cites no authority requiring such disclosure.  Opp. 23.

*Finally,* Plaintiff is left with its unsubstantiated claim that GE's risk disclosures regarding Alstom synergies and the power market did not suffice under Item 303 because allegedly the "risk had already materialized."  Opp. 26-27 & n.21; Mot. 20 & n.10.  Plaintiff further points erroneously to the alleged "purposeful[] exclu[sion]" of the Alstom warning from GE's Q1 2018 Form 10-Q

as evidence of "Defendants' contemporaneous knowledge" that Alstom "was not accretive," Opp. 27, but the filings Plaintiff cites show on their face that there was no such exclusion.  Indeed, GE's Forms 10-Q expressly incorporate the risk disclosures of its most recent Form 10-K.[4]  *See* Ex. 51, Q1 2018 10-Q, at 104 (cross-referencing 2017 Form 10-K "[f]or a discussion of our risk factors").[5]

## B.    Defendants' Statements Regarding H-Class Turbines Were Not False Or Misleading

The SAC also fails to allege the falsity of any statement regarding GE's H-class turbines. *First*, Plaintiff fails to allege any facts showing that Defendants had a duty to disclose the oxidation issue at the outset.  Plaintiff acknowledges, as it must, that Defendants were entitled to a reasonable time to investigate, and that a duty to disclose only arises "once the investigation reveals material negative information."  Opp. 13-14; *see also Okla. Firefighters Pension & Ret. Sys. v. Xerox Corp.*, 300 F. Supp. 3d 551, 577 (S.D.N.Y. 2018), *aff'd sub nom. Ark. Pub. Emps. Ret. Sys. v. Xerox Corp.*, 771 F. App'x 51 (2d Cir. 2019) (no duty to disclose implementation challenges or technical defects with key software platform while development continued).  Yet, Plaintiff insists that GE had a duty to disclose its 2015 root cause analysis into an incident of blade failure in a predecessor turbine model, the 9FB.  Opp. 13-14.  Not only does Plaintiff fail to plead the results of that analysis with any particularity, but the SAC's allegations undermine Plaintiff's claim that GE should have found at that time that oxidation would or could result in "catastrophic" consequences to H-class

---

[4]    On this point and others, Plaintiff's attached exhibits, *see* Opp. at Exs. 1-3, blatantly misstate certain facts, claiming (for example) that GE did not conduct interim impairment testing in Q4 2017, *e.g.*, Ex. 2, even though (as the SAC alleges) it did, *e.g.*, ¶¶ 222-26, or that GE's 2017 10-K removed "Alstom risk warnings," *e.g.*, Ex. 2, when it did not.  Ex. 22, 2017 10-K, at 106.

[5]    The Opposition, but not the SAC, alleges that Mr. Flannery and Ms. Miller certified the Q1 and Q2 2018 Forms 10-Q in accordance with the Sarbanes-Oxley Act of 2002.  *Compare* ¶¶ 20-21 (noting only that each signed the 2017 Form 10-K), *with* Opp. 19 n.14.  Plaintiff cannot amend the SAC through its Opposition, and in any event these allegations carry no weight.  *See Simpson v. Wells Fargo Bank*, 2016 WL 393544, at *4 (S.D.N.Y. Feb. 1, 2016); Mot. 14-19.

turbines.  *Id.* 14; *see* Mot. 10, 25.  According to the SAC, in 2017, GE developed a solution and

was scheduling opportunities to implement it with its customers.  *E.g.*, ¶¶ 86-87, 110.  Plaintiff's

reliance on authority concerning the duty to disclose internal investigations confirming corporate

mismanagement or uncharged misconduct is misplaced; no facts suggesting such conduct are

alleged here.  *See* Opp. 14.

     *Second*, Plaintiff tacitly concedes the literal truth of Defendants' positive statements

regarding the H-class turbine's performance and achievements.  Opp. 8-10.  Further, these positive

statements are inactionable puffery, *see* Mot. at 22-23, and Plaintiff fails to show otherwise.  Opp.

12-13.  And to the extent any challenged statements relate to "measurable" facts about the

performance of the H-class turbine rather than optimistic characterizations thereof, Plaintiff fails

to plead facts suggesting those measures were not achieved, and in fact, effectively concedes they

were.  *See id.* 8-9.  At bottom, GE's truthful statements regarding the H-class turbine's

"demonstrated" performance and operational levels and achievements did not address or

communicate anything about the lifespan of one blade part that was not failing at the time.  Absent

well-pled facts showing that the oxidation issue rose to the level of a known "serious defect," Opp.

14, significant enough to undermine the value of GE Power's turbine business as a whole—as

opposed to a technical flaw impacting a single component that GE was actively addressing with

an upgrade—Plaintiff's omission theory fails.  *See* Mot. 23, 26-27; ¶¶ 86-87; *In re Lululemon Sec.*

*Litig.*, 14 F. Supp. 3d 553, 579 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015) (rejecting

plaintiff's theory that "every time defendants spoke publicly about the high quality of the

company's products . . . such statements were false and misleading because they failed to also

disclose other quality control issues").[6]

*Third*, as to the challenged statements following the September 2018 Exelon incident, which actually concerned the oxidation issue, Plaintiff still fails to state a claim. Plaintiff relies principally on a secondhand characterization in a September 2018 *Reuters* article of information purportedly provided by GE. Opp. 9-10. Plaintiff then goes on to mischaracterize the secondhand information, arguing erroneously that it says that GE claimed that it learned about oxidation in September 2018, when all it says is that "[t]he problem" in the H-class turbine—related to an unexpected blade failure—was first discovered at Exelon. *See* Ex. 32, Sept. 20, 2018 *Reuters* Article, at 1; *see also* ¶ 495; Mot. 11, 26-27. Plaintiff also has no support for its theory that Defendants "downplayed" the scope of the oxidation issue. Opp. 14-15. In fact, Plaintiff does not dispute the sufficiency of the reserve that GE took to fix the issue.[7]

*Finally*, Plaintiff's Item 303 claims also fail. Plaintiff agrees that Defendants were only required to disclose manufacturing defects that were "presently known" and "reasonably likely" to have a ***material*** adverse effect on revenues and profits. Opp. 15. Plaintiff speculates, however, that "Defendants certainly knew that a manufacturing defect requiring the complete replacement of a critical component of its flagship product (on which GE explicitly staked its financial success) would materially affect GE's financials." *Id.* 16. But apart from conjecture (by Plaintiff or by the

---

[6]     Plaintiff's focus on materiality (Opp. 11-12) is a red herring. Defendants did not challenge materiality at this stage. Rather, Defendants demonstrated that Plaintiff fails to allege that Defendants had any duty to disclose a maintenance issue with a single turbine component that was being addressed, or that this omission rendered any of the challenged statements misleading. *See* Mot. 21-26; *In re Rockwell Med., Inc. Sec. Litig.*, 2018 WL 1725553, at *11 (S.D.N.Y. Mar. 30, 2018) ("[S]imply because an omitted fact would be 'interesting' to an investor does not render all other statements on that topic misleading absent disclosure.").

[7]     Moreover, the Opposition simply parrots the SAC's speculative allegations regarding GE's extension of warranty coverage "at significant expense," customers' concerns "about the lack of a solution," and GE's attribution of "reduced sales" to "external factors," and makes no attempt to deny that such allegations rest on innuendo rather than facts. *See* Opp. 10; Mot. 23 & n.12.

media sources or analyst commentary it references), Plaintiff points to nothing that supports its exaggerated characterization of the oxidation issue or its purportedly material effect on GE's financials—much less any Defendant's knowledge of the same.  To the contrary, the reserve taken by GE to cover the upgrades—the sufficiency of which Plaintiff does not dispute—was less than 1% of GE's total annual revenue in 2018.  *See* Mot. 12.  Further, Plaintiff's challenge to the sufficiency of GE's warnings quibbles with GE's word choice without explaining how it is false or misleading.  For example, Plaintiff prefers "manufacturing defect" to "operational process failure," but does not show why the latter language is false.  *See* Opp. 16.  Most fundamentally, Plaintiff fails adequately to allege that the "risk being warned of had already come to pass," *id.*, before the Exelon incident.

## II.     THE SAC DOES NOT PLEAD A STRONG INFERENCE OF SCIENTER

The SAC fails to plead a strong inference of scienter.  Plaintiff maintains that it has shown a cognizable motive by pleading that Defendants faced "colliding existential threats," and their "careers and the very survival of the company were on the line."  Opp. 33-34.  But such motives are "far too generalized (and generalizable) to allege the proper 'concrete and personal' benefit required by the Second Circuit."  *In re PXRE Grp., Ltd., Sec. Litig.*, 600 F. Supp. 2d 510, 530-33 (S.D.N.Y.), *aff'd sub nom. Condra v. PXRE Grp. Ltd.*, 357 F. App'x 393 (2d Cir. 2009); Mot. 28-30.  Plaintiff's reliance on law from other circuits (*e.g.*, Opp. 33-34) is misplaced, and its attempt to distinguish law from this Circuit as involving "general allegations regarding executive compensation and insider trading" (allegations Plaintiff is ***unable*** to advance here) (*see id.* 33 n.25) fails, because the SAC's alleged motives are just as generic.  Lacking motive, Plaintiff must overcome the high hurdle of pleading recklessness.  Mot. 30.  Plaintiff fails to do so.

### A.     Plaintiff Has Not Pled Recklessness Regarding Goodwill

In its Opposition, Plaintiff repackages the same non-particularized allegations of scienter

regarding goodwill that are featured in the SAC.  Opp. 27-35.  Specifically, given the total lack of FEs with knowledge or any documents evidencing fraud, Plaintiff resorts to trying to prove recklessness through a series of inadequate circumstantial facts.  *See id.* 27-33.

*First*, Plaintiff stresses the magnitude of the goodwill impairment charge, *see* Opp. 27-28, but courts have consistently held that is not enough.  *See Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*, 694 F. Supp. 2d 287, 302 (S.D.N.Y. 2010).  Indeed, Plaintiff's own cases rely on multiple factors other than magnitude that are decidedly absent here.  *See* Opp. 27-28; *e.g.*, *Plumbers & Pipefitters Nat'l Pension Fund v. Orthofix Int'l N.V.*, 89 F. Supp. 3d 602, 618-19 (S.D.N.Y. 2015) (finding scienter based on restatement of financials that admitted violations of "basic accounting principles" under GAAP).

*Second*, Plaintiff asks the Court to infer scienter from the alleged "suspicious" timing of GE's goodwill impairment because GE allegedly knew "identical" information "between the second and third quarter impairment tests."  Opp. 28-31.  Defendants' Motion specifically pointed out the absence of supporting facts.  Mot. 15-20.  In its Opposition, Plaintiff does not cite to any information actually used by GE in either quarter.  Nor does Plaintiff respond to Defendants' argument that use of the same data would not in any event imply that GE made a false statement by taking an impairment in Q3 that was not taken in Q2, because goodwill estimates are based on judgments that can change from one reporting period to another.  Mot. 16-17.  Plaintiff also points to the bare facts that the impairment charge occurred three months after Ms. Hauser announced her intention to resign and one month after Mr. Culp replaced Mr. Flannery as CEO.  *See* Opp. 29-30.  But, "[i]n reality, there are any number of reasons that an executive might resign."  *Wyche v. Advanced Drainage Sys., Inc.*, 2017 WL 971805, at *17 (S.D.N.Y. Mar. 10, 2017), *aff'd*, 710 F. App'x 471 (2d Cir. 2017).  Plaintiff does not (and cannot) articulate any "sufficiently particular" fact, *In re Openwave Sys. Sec. Litig.*, 528 F. Supp. 2d 236, 251 (S.D.N.Y. 2007), that draws any

link between these departures and GE's decision to write down goodwill.

*Third*, Plaintiff points to government investigations as alleged circumstantial evidence of scienter.  *See* Opp. 31.  But investigations, without more, show nothing about scienter.  *See* Mot. 31; *see also, e.g.*, *Cortina v. Anavex Life Scis. Corp.*, 2016 WL 7480415, at *8 (S.D.N.Y. Dec. 29, 2016) ("[I]nvestigations, by themselves, do not give rise to a compelling inference of scienter.").

*Fourth*, Plaintiff resorts to the dubious "core operations" doctrine, contending that Power was a "key business line," and therefore, it would be "exceedingly unlikely" that Defendants Flannery, Miller, and Hauser "were unaware of the need to materially impair goodwill" earlier than GE did.  Opp. 31-33.  But "there is considerable doubt whether the core operations doctrine survived enactment of the PSLRA."  *Cortina*, 2016 WL 7480415, at *8.  In any event, the doctrine does not apply here, given that Power constitutes less than half of GE's overall business and was never a "core operation" as that term has been defined in the case law.  *See In re Ferrellgas Partners, L.P., Sec. Litig.*, 2018 WL 2081859, at *19 (S.D.N.Y. Mar. 30, 2018) (requiring that "the operation in question constitute nearly all of a company's business" to be a "core operation").

## B.      Plaintiff Has Not Pled Recklessness Regarding H-Class Turbines

With respect to the oxidation issue, because Plaintiff does not plead any actual knowledge of fraud by anyone, it can only ask this Court to ***infer*** recklessness based on allegations that actually show the contrary:  (i) "GE informed customers about the defective HA blades" and stated it "would need to inspect and replace them"; (ii) news coverage during the Class Period contained statements reflecting that GE was aware of the potential oxidation issue and taking steps to address it; and (iii) other coverage reported on a previously unscheduled Board meeting following the September 2018 incident during which the issue was discussed.  *See* Opp. 17-18.

The SAC is devoid of any particularized facts that demonstrate a strong inference of scienter or offset these contra-indicators of scienter.  *See* Mot. 35-36.  It is not surprising that

complex machinery used to generate power on an industrial level can suffer from growing pains—as GE's own customers confirmed in Plaintiff's cited articles. *See id.* 11. Alleging that GE discussed the potential oxidation concern with customers before any H-class blade broke (or that the Board discussed the oxidation issue after the blade broke)[8] is not the same as alleging that Defendants knew or recklessly disregarded the severity or scope of the problem prior to the Exelon incident.[9] *See In re Apple Computer, Inc.*, 127 F. App'x 296, 303 (9th Cir. 2005) ("Because design, marketing and manufacturing problems are common to business, a securities fraud claim must do more than allege the existence of such problems; plaintiffs must allege with particularity that a speaker knew that the severity, timing and extent of such problems rendered the statement false when made."). Nor do these facts raise a "strong inference" that Defendants knew or recklessly disregarded that their positive statements about H-class turbines' performance, or GE's planned solution for the oxidation issue, were misleading. *See* Mot. 33-36. Plaintiff's cited cases, *see* Opp. 17-18, only reinforce the inadequacy of Plaintiff's allegations here, *e.g.*, *In re Inv. Tech. Grp.*, *Inc. Sec. Litig.*, 251 F. Supp. 3d 596, 621 (S.D.N.Y. 2017) (detailed allegations regarding defendant's direct knowledge of and failure to take steps to prevent misconduct related to trading program pled scienter). Indeed, the lack of support for Plaintiff's theory is underscored by Plaintiff's relegation of the SAC's **sole** FE to a footnote, Opp. 18 n.13—likely because his sparse statements regarding the process of issuing TILs do nothing to support Plaintiff's claims, *see* Mot. 33-35.[10]

---

[8]      Plaintiff does not even allege with particularity what the Board discussed. *See* Opp. 1, 18.

[9]      Plaintiff's contention that "Defendants . . . admitted they had known of the issue even earlier, in 2015," *see* Opp. 19, is not supported by the sources on which it relies, *see* ¶ 163; Mot. 25, and instead is contradicted by other articles cited in the SAC. *E.g.*, Ex. 37, Gabelli Analyst Report, at 1 ("GE had known about it for a year [since 2017] . . . .").

[10]      Plaintiff is wrong that its "identification of [the FE's] role at the Company and employment dates sufficiently support[s] his knowledge," Opp. 18 n.13, but in any event, the FE has no knowledge of what information was actually known by any Defendant, *see* ¶¶ 28, 91-93.

## III.     THE SAC DOES NOT PLEAD LOSS CAUSATION

The Opposition does not salvage the SAC's facially flawed theories of loss causation. Plaintiff first admits, as it must, that GE's stock price ***rose*** after GE announced on October 1, 2018 that it would impair approximately $23 billion of its goodwill.  Opp. 38.  That is fatal to its theory of loss causation on the goodwill issue.  *See* Mot. 37-38; *Waters v. Gen. Elec. Co.*, 2010 WL 3910303, at *8 (S.D.N.Y. Sept. 29, 2010), *aff'd*, 447 F. App'x 229 (2d Cir. 2011).  Plaintiff tries to downplay this increase by arguing that the October 1 disclosure "introduced mixed news into the market," Opp. 38, and that GE recorded the "impairment's precise amount" of $22 billion a few weeks later, *id.* 39.  But neither GE's announcement of a new CEO on October 1 nor its announcement of a lesser impairment charge on October 30 negates the fact that the market knew long before October 30 that GE would take the goodwill impairment at issue in Plaintiff's claims.[11] Plaintiff is wrong that GE's October 30 announcement revealed "new" information, *id.*—the goodwill impairment was simply the materialization of a previously disclosed risk.  *See Central States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*, 543 F. App'x 72, 77 (2d Cir. 2013).  And contrary to Plaintiff's argument, the disclosure of government investigations is "itself insufficient to plead loss causation."  *Janbay v. Canadian Solar, Inc.*, 2012 WL 1080306, at *15 (S.D.N.Y. Mar. 30, 2012).  Lastly, Plaintiff's allegations related to credit rating downgrades fail to plead loss causation because they disclosed nothing but a negative assessment of (already) public information.  *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 175 & n.4 (2d Cir. 2005).

---

[11]     Plaintiff's case law is inapposite.  Two of the cases it cites relate to the existence of an efficient market at the class certification stage.  *See In re Petrobras Sec. Litig.*, 862 F.3d 250, 277-78 (2d Cir. 2017); *Monroe Cty. Employees' Ret. Sys. v. S. Co.,* 2019 WL 3956139, at *12 & n.11 (N.D. Ga. Aug. 22, 2019).  And in *In re DRDGOLD Ltd. Securities Litigation*, the defendant stated that it would take a "not yet quantified" impairment and, one week later, announced that it would take a "full impairment," causing a drop in its stock price.  472 F. Supp. 2d 562, 575-76 (S.D.N.Y. 2007).  In contrast, here, GE disclosed and quantified the size of its expected impairment, and then took an impairment entirely consistent with its earlier disclosure.

Plaintiff also fails to plead loss causation regarding the H-class turbines.  Plaintiff now acknowledges that, as with the goodwill impairment, GE's stock price also ***rose*** after it disclosed on September 19, 2018 that the oxidation issue had impacted the blade in an H-class turbine at a customer site.  Opp. 36; ¶ 119.  Plaintiff's quibble that the disclosure was "buried in the penultimate paragraph of a 5-page post," Opp. 37, does not change the fact that the issue was disclosed.  And the fact that GE's stock price declined post-September 19, after reporters and analysts offered their negative take on the issue, is irrelevant.  *Id.* 36-37.  Plaintiff cannot rely on "after-the-fact 'negative characterization of already-public information'" to establish loss causation.  *In re CRM Holdings, Ltd. Sec. Litig.*, 2012 WL 1646888, at *31 (S.D.N.Y. May 10, 2012); Mot. 39-40.

## IV.    THE SAC DOES NOT PLEAD A SECTION 20(A) CLAIM

The Section 20(a) claim fails because Plaintiff has not pled any primary liability.  Further, Plaintiff nowhere addresses, and therefore concedes, the lack of requisite control under Section 20(a) by Messrs. Stokes, Nugent, Strazik, and Mastrangelo over GE, or of Ms. Hauser with respect to the H-class oxidation issue.  *See* Opp. 40; Mot. 3 n.2 (listing executives' roles and titles), 40.  Plaintiff's claim that culpable participation is "satisfied by failure to correct misstatements of other defendants" is not supported by the sole authority that it cites, Opp. 40 (citing *Meyer v. Concordia Int'l Corp.*, 2017 WL 4083603, at *9 (S.D.N.Y. July 28, 2017)).  Rather, the law is clear that Mr. Flannery's and Ms. Miller's mere ***participation*** in two conference calls (only one of which contained purportedly misleading statements by Mr. Stokes), unaccompanied by well-pled allegations showing their knowledge of contradictory facts, does not establish their primary liability for, *see supra* Section I, nor their ***culpable*** participation in, any alleged fraud.  *Concordia*, 2017 WL 4083603, at *9.

## <u>CONCLUSION</u>

The Court should grant Defendants' Motion and dismiss the SAC with prejudice.

Dated:  New York, New York
        November 8, 2019

Respectfully submitted,

LATHAM & WATKINS LLP

By:    /s/ Miles N. Ruthberg
       Miles N. Ruthberg
       Blake T. Denton
       885 Third Avenue
       New York, New York 10022
       (212) 906-1200
       miles.ruthberg@lw.com
       blake.denton@lw.com

       Sean M. Berkowitz (*pro hac vice*)
       330 North Wabash Avenue, Suite 2800
       Chicago, Illinois 60611
       (312) 876-7700
       sean.berkowitz@lw.com

       William J. Trach (*pro hac vice*)
       200 Clarendon Street
       Boston, Massachusetts 02116
       (617) 948-6000
       william.trach@lw.com

       Sarah A. Tomkowiak (*pro hac vice*)
       555 Eleventh Street NW
       Washington, D.C. 20004
       (202) 637-2200
       sarah.tomkowiak@lw.com

       *Attorneys for Defendants General Electric
       Company, John L. Flannery, Jamie S.
       Miller, Jan R. Hauser, Russell Stokes,
       Chuck Nugent, Scott Strazik, and
       Joe Mastrangelo*

16