**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE GENERAL ELECTRIC SECURITIES LITIGATION | 19 Civ. 1013 (DLC) |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW PURSUANT TO 15 U.S.C. § 78u-4(c)(1)**

LATHAM & WATKINS LLP
Miles N. Ruthberg
Blake T. Denton
885 Third Avenue
New York, New York 10022
(212) 906-1200

Sean M. Berkowitz (*pro hac vice*)
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
(312) 876-7700

William J. Trach (*pro hac vice*)
200 Clarendon Street
Boston, Massachusetts 02116
(617) 948-6000

Sarah A. Tomkowiak (*pro hac vice*)
555 Eleventh Street NW
Washington, D.C. 20004
(202) 637-2200

*Attorneys for Defendants*

April 2, 2021

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ........................................................................................1

PROCEDURAL HISTORY..............................................................................................3

LEGAL STANDARD........................................................................................................6

ARGUMENT ....................................................................................................................8

      A.     Plaintiff Mischaracterized GE's Paraphrased Statement in a September 20,
2018 *Reuters* Article ........................................................................................8

      B.     Neither the SAC nor the Sources It Cites Supported the Opposition's
Claim that GE Prevented an Analyst from Disclosing the H-class
Oxidation Issue .............................................................................................11

      C.     Plaintiff's "Goodwill Fraud Timeline" Blatantly Misstated Facts .......................13

      D.     The Sources Plaintiff Relied Upon Belied Its Claim that GE's Q2 2018
and Q3 2018 Goodwill Impairment Analyses Used the Same Data.....................14

      E.     The AC Misrepresented the Date of GE's First Disclosure of the H-class
Oxidation Issue .............................................................................................15

      F.     The Failures of the AC, SAC, and Opposition Were Substantial Under
Rule 11(b), and the PSLRA's Presumptive Remedy Applies................................18

CONCLUSION................................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*AJ Energy LLC v. Woori Bank*,
  No. 18 Civ. 3735, 2019 WL 4688629 (S.D.N.Y. Sept. 26, 2019),
  *aff'd*, 829 F. App'x 533 (2d Cir. 2020)................................................................12, 13

*In re AOL, Inc. Repurchase Offer Litig.*,
  No. 12 Civ. 3497, 2013 WL 6331802 (S.D.N.Y. Dec. 5, 2013)...................................6, 10, 11

*In re Austl. & N.Z. Banking Grp. Ltd. Sec. Litig.*,
  712 F. Supp. 2d 255 (S.D.N.Y. 2010).............................................................. *passim*

*Cooter & Gell v. Hartmarx Corp.*,
  496 U.S. 384 (1990)..................................................................................16

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005)..................................................................................17

*Gurary v. Nu-Tech Bio-Med, Inc.*,
  303 F.3d 212 (2d Cir. 2002)...........................................................................7

*Levine v. F.D.I.C.*,
  2 F.3d 476 (2d Cir. 1993) ...........................................................................15

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*,
  135 S. Ct. 1318 (2015)................................................................................4

*Parnoff v. Fireman's Fund Ins. Co.*,
  796 F. App'x 6 (2d Cir. 2019) .........................................................................6

*Rosario v. Receivable Mgmts. Servs. Corp.*,
  No. 11 Civ. 8720, 2012 WL 2359874 (S.D.N.Y. July 21, 2012) ............................................6

*In re Star Gas Sec. Litig.*,
  745 F. Supp. 2d 26 (D. Conn. 2010)....................................................................14

*Turner v. MagicJack VocalTec, Ltd.*,
  No. 13 Civ. 0448, 2014 WL 406917 (S.D.N.Y. Feb. 3, 2014) .............................................17

### STATUTES

15 U.S.C. § 78u-4 ....................................................................................7, 18

## RULES

Fed. R. Civ. P. 11 ........................................................................................................6

Defendants General Electric Co. ("GE" or the "Company"), John L. Flannery, Jamie S. Miller, Jan R. Hauser, Russell Stokes, Chuck Nugent, Scott Strazik, and Joe Mastrangelo (together with GE, "Defendants") respectfully submit this response to Plaintiff Teachers' Retirement System of Oklahoma's ("Plaintiff") Proposed Findings of Fact and Conclusions of Law Under 15 U.S.C. § 78u-4(c)(1) Regarding the Compliance with Federal Rule of Civil Procedure 11(b) ("Rule 11(b) Submission").[1] Dkt. No. 110.

## PRELIMINARY STATEMENT

In its (unsuccessful) attempt to piece together a viable claim for securities fraud, Plaintiff advanced various allegations that were easily disproven and/or turned out to be entirely unsubstantiated. Any objectively reasonable inquiry into the basis for those allegations would have exposed these deficiencies and the lack of evidentiary support (or future likelihood thereof). That means that Plaintiff either failed to perform such an inquiry, or it did perform such an inquiry, but ignored what it found. In either case, Plaintiff's conduct violates Rule 11(b)(3).

To deter frivolous securities claims, the Private Securities Litigation Reform Act ("PSLRA") requires that courts assess Rule 11(b) compliance at the conclusion of cases arising under the Securities Exchange Act of 1934. Pursuant to that requirement, on February 25, 2021, this Court invited briefing concerning Plaintiff's compliance with the Rule.[2] When Plaintiff filed its Rule 11(b) Submission, however, it failed to address various errors in allegations central to the

---

[1]     Unless otherwise indicated, all internal citations and quotations are omitted, emphasis is added, and citations to "Ex. __" refer to exhibits attached to the Declaration of Blake T. Denton, submitted with Defendants' Motion to Dismiss the Second Amended Complaint, Dkt. No. 89, and the Supplemental Declaration of Blake T. Denton, submitted with Defendants' Reply in further support of their Motion to Dismiss, Dkt. No. 99.

[2]     Plaintiff's Rule 11(b) Submission nonetheless included proposed findings of fact and conclusions of law regarding Defendants' compliance. *See* Rule 11(b) Submission at 16-17, ¶¶ 33, 38. Defendants do not dispute Plaintiff's proposed conclusion that Defendants complied with Rule 11(b).

viability of its claims, including allegations in its Amended Complaint ("AC") (Ex. 2, cited as "AC ¶ _") and Second Amended Complaint ("SAC") (Ex. 1, cited as "SAC ¶ _"), and arguments in its Opposition to Defendants' Motion to Dismiss the SAC, Dkt. No. 95, even though many were identified in motion to dismiss briefing and/or this Court's subsequent opinion.   Defendants respectfully submit this response to ensure the Court has a full picture of the relevant facts.

*First*, Plaintiff repeatedly claimed that a paraphrased statement attributed to GE in a news article supported its theory that GE misrepresented when it learned of an oxidation issue impacting its H-class turbines.  But the article makes clear (as do other articles and disclosures upon which Plaintiff relied in the AC and SAC) that Plaintiff took liberties in characterizing both the context of the referenced statement and what it revealed about the timing of GE's discovery of the oxidation issue.

*Second*, in an effort to bolster its weak allegations of scienter, Plaintiff claimed in its Opposition that GE "actively tried to prevent" a market analyst from disclosing technical challenges with GE's H-class turbines.   There was absolutely no evidentiary basis for that assertion.

*Third*, to support its claims based on GE's goodwill estimates, Plaintiff submitted a "Goodwill Fraud Timeline," Dkt. No. 96-2, with its Opposition that blatantly misstated facts when it claimed that GE did not conduct interim goodwill impairment testing in the fourth quarter of 2017, and that GE removed a goodwill-related risk warning from its Form 10-K for the year ended December 31, 2017.

*Fourth*, the SAC alleged other baseless "facts," such as that GE's second and third quarter 2018 goodwill impairment analyses used the "same data" even though they were conducted months apart (Plaintiff appeared to subsequently concede it was mistaken in that regard but then continued to refer to the data as "nearly identical" without any factual support).

2

*Fifth*, Plaintiff alleged in the AC that the H-class turbine oxidation issue was first disclosed on September 20, 2018, when in fact GE disclosed the issue one day earlier via a press release and a publicly available LinkedIn post.  Notably, on September 19, 2018 (the correct date), GE's stock price actually *increased*, presenting an obstacle for any securities fraud claim, like Plaintiff's, which must plead an investment *loss* caused by the alleged fraud.  Similarly, Plaintiff omitted that following GE's initial disclosure of the third quarter 2018 goodwill impairment charge related to its Power business, GE's stock price again *increased*.  Any reasonable inquiry into Plaintiff's purported securities fraud claims would have identified the correct date that GE disclosed the H-class oxidation issue, as well as the foregoing increases in GE's stock price.  Yet it was only after Defendants' Motion to Dismiss the AC raised these obvious issues—which fatally undermined Plaintiff's loss causation theory—that Plaintiff attempted to address them.

The foregoing deficiencies warrant sanctions under Rule 11(b) because they would have been avoided had Plaintiff undertaken, and limited its pleadings to that which was supported by, the objectively reasonable inquiry that Rule requires.  Plaintiff has advanced no viable theory for why its pleadings did not violate Rule 11 and does little to explain the basis for these untrue factual allegations, which underpinned its accusations of securities fraud.  Defendants respectfully request that the Court impose sanctions on Plaintiff and its attorneys for Plaintiff's substantial failure to comply with Rule 11(b), in the full amount of Defendants' reasonable attorneys' fees and costs.

## PROCEDURAL HISTORY

This action was initiated in February 2019.  On April 25, 2019, the Court consolidated two complaints filed by other plaintiffs, and appointed Plaintiff and Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") as lead plaintiff and lead counsel, respectively.  Case Management Order, Dkt. No. 62, at 1.  Two months later, on June 21, 2019, Plaintiff filed the AC.  Dkt. No. 70.  The AC contained Plaintiff's allegation that a September 20, 2018 *Reuters* article about four

turbines that shut down due to oxidation "quoted GE as stating that '[t]he problem was first discovered on turbine blades in a natural gas-fueled turbine operated by Exelon Corp. in Texas [a] few weeks ago,' despite that GE knew of the oxidation issue since 2015." AC ¶¶ 15, 119, 347-48. The AC further claimed that the H-class oxidation issue "abruptly came to light" on September 20, 2018, and that GE's stock price decreased that day. AC ¶¶ 116-28. In fact, GE disclosed the issue one day prior, on September 19, after which GE's stock price increased. Ex. 30, Sept. 19, 2018 LinkedIn Post; Ex. 31, Sept. 19, 2018 Press Release; Ex. 7, GE Historical Stock Price. The AC noted GE's initial announcement of an expected Power segment goodwill impairment charge on October 1, 2018 as a result of its third quarter impairment analysis, *see* AC ¶¶ 34, 320, but omitted that GE's stock price increased following that announcement.

Defendants filed their Motion to Dismiss the AC on August 2, 2019, Dkt. Nos. 76-78, and rather than oppose it, Plaintiff elected to file the SAC on August 30, Dkt. No. 80. The SAC added no new confidential witnesses, internal documents, or other materials revealing any fraud. It did, however, continue to assert that the September 20, 2018 *Reuters* article "quoted" GE as stating the "oxidation issue" was "first discovered" only "a few weeks ago." SAC ¶¶ 120, 495-96. It also conceded that GE disclosed the H-class turbine issue on September 19, 2018—rather than September 20, 2018, as it had claimed in the AC. *Compare* AC ¶¶ 116-28, *with* SAC ¶¶ 119-20. Last, in an apparent effort to satisfy the stringent pleading standards articulated in *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, 135 S. Ct. 1318 (2015), *see* Mem. of Law in Supp. of Mot. to Dismiss the AC, Dkt. No. 78, at 14-18, Plaintiff added, for the first time, the unsupported allegation—purportedly based on statements in GE's Forms 10-Q for the relevant quarters—that GE's "second quarter [("Q2")] 2018 and third quarter [("Q3")] 2018 [goodwill] impairment analyses [had] use[d] the same data, yet [had] arrive[d] at opposite results," indicating the pre-charge second quarter analysis "lacked any reasonable basis." *See* SAC ¶ 355.

4

Defendants filed their Motion to Dismiss the SAC on September 27, 2019, Dkt. Nos. 88-90, and Plaintiff filed its Opposition on October 25, 2019, Dkt. No. 95. Plaintiff's mischaracterization of the *Reuters* article was a centerpiece of that Opposition; Plaintiff claimed that GE's statements "following the September 2018 Exelon blade break [we]re particularly striking," and that it was "blatantly false" for GE to "t[ell] *Reuters* [in September 2018] that the oxidation problem was 'first discovered on turbine blades in a natural gas-fueled turbine operated by Exelon Corp. in Texas a few weeks ago,'" because "GE later admitted that it learned of the oxidation issue in 2015, and had been inspecting and replacing blades since 2017." Opp., Dkt. No. 95, at 9-10. In addition, Plaintiff made the unsubstantiated claim that GE had "actively tried to prevent" an analyst from disclosing the H-class oxidation issue, citing ¶ 404 of the SAC, when no such thing occurred or was pled with particularity anywhere in the SAC. *See id.* at 18; SAC ¶ 404; *infra* Section B. In connection with that Opposition, Plaintiff submitted an accompanying "Goodwill Fraud Timeline," appended to a declaration by Laura H. Posner of Cohen Milstein. The timeline erroneously claimed that GE did not conduct interim goodwill impairment testing in the fourth quarter of 2017, and that GE removed a goodwill-related risk warning from its Form 10-K for the year ended December 31, 2017. *See* Dkt. No. 96-2; Reply, Dkt. No. 100, at 7 n.4. In fact, GE did perform a goodwill impairment analysis in the fourth quarter, Ex. 22, 2017 10-K, at 84, and the risk warning remained in the 2017 10-K, *id.* at 106.

On May 7, 2020, the Court dismissed the SAC in its entirety for failure to state a claim. Opinion & Order, Dkt. No. 105. Dismissal was affirmed on appeal by the Second Circuit and Plaintiff elected not to appeal any further. Thereafter, the Court ordered a submission by Plaintiff regarding its compliance with Rule 11(b) of the Federal Rules of Civil Procedure. Order, Dkt. No.

109.  Plaintiff filed its Rule 11(b) Submission on March 19, 2021.[3]

## LEGAL STANDARD

Rule 11(b) requires an attorney to certify that, "after an inquiry reasonable under the circumstances," (1) a pleading or other paper is not "presented for any improper purpose"; (2) "the claims, defenses, and other legal contentions" contained therein "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law"; and (3) "the factual contentions" contained therein "have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." FED. R. CIV. P. 11(b)(1)-(3).  Under Rule 11(b), therefore, "an attorney has an affirmative duty to make 'reasonable inquiry into the facts and the law.'" *Rosario v. Receivable Mgmts. Servs. Corp.*, No. 11 Civ. 8720, 2012 WL 2359874, at *5 (S.D.N.Y. July 21, 2012) (Cote, J.) (quoting *Perez v. Posse Comitatus*, 373 F.3d 321, 324 (2d Cir. 2004)).  A pleading violates Rule 11(b) "where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact." *Parnoff v. Fireman's Fund Ins. Co.*, 796 F. App'x 6, 8 (2d Cir. 2019) (quoting *Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002)).  "Since the inquiry must be 'reasonable under the circumstances,' liability for Rule 11 violations requires only a showing of objective unreasonableness"—not of bad faith—"on the part of the attorney or client signing the papers." *In re Austl. & N.Z. Banking Grp. Ltd. Sec. Litig.*, 712 F. Supp. 2d 255, 263 (S.D.N.Y. 2010) (Cote, J.) (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 150, 152 (2d Cir. 2009)).  An erroneous statement of fact within a pleading gives

---

[3]     Defendants did not seek sanctions when filing their motions to dismiss or move for sanctions thereafter.  Rule 11(b) Submission ¶¶ 13, 15, 31.  That is of no moment to this Response, which this Court's Order permits.  Dkt. No. 109 at 2; *see also, e.g.*, *In re AOL, Inc. Repurchase Offer Litig.*, No. 12 Civ. 3497, 2013 WL 6331802, at *2 (S.D.N.Y. Dec. 5, 2013) (Cote, J.) (imposing sanctions following *sua sponte* order requiring plaintiff to address its compliance with Rule 11(b)).

rise to the imposition of sanctions when the "particular allegation is utterly lacking in support." *Id.* at 263-64 (quoting *Kiobel v. Millson*, 592 F.3d 78, 81 (2d Cir. 2010)).

As this Court has noted, the PSLRA requires a court to make factual findings regarding the parties' compliance with Rule 11(b) "as to any complaint, responsive pleading, or dispositive motion" in securities cases like this one. 15 U.S.C. § 78u-4(c)(1); Order, Dkt. No. 109, at 1. "'The express congressional purpose' of this provision of the PSLRA is 'to increase the frequency of Rule 11 sanctions in the securities context, and thus tilt the "balance" toward greater deterrence of frivolous securities claims.'" *In re Austl.*, 712 F. Supp. 2d at 263 (quoting *ATSI*, 579 F.3d at 152); *see also Gurary v. Nu-Tech Bio-Med, Inc.*, 303 F.3d 212, 219-20 (2d Cir. 2002) ("[T]he 104th Congress included in the [PSLRA] a measure intended to put 'teeth' in Rule 11." (quoting *Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157, 166-67 (2d Cir. 1999))). Thus, if the court finds that "a party or attorney violated any requirement of Rule 11(b)," then "the court shall impose sanctions." 15 U.S.C. § 78u-4(c)(2).

The presumptive remedy for a "substantial failure of any complaint" to comply with any requirement of Rule 11(b) "is an award to the opposing party of the reasonable attorneys' fees and other expenses incurred in the action." *Id.* § 78u-4(c)(3)(A)(ii). A complaint's failure is "substantial" even when certain claims are found not to violate Rule 11(b) if those nonfrivolous claims are "insufficiently meritorious to save the [lawsuit] as a whole from being abusive." *In re Austl.*, 712 F. Supp. 2d at 269 (quoting *Gurary*, 303 F.3d at 222). Dismissal of an entire complaint for failure to state a claim signals that the nonfrivolous claims are "not 'of a quality sufficient to make the suit as a whole nonabusive,'" particularly where they "patently lacked merit." *See id.* at 269 & n.16 (quoting *Gurary*, 303 F.3d at 223).

## ARGUMENT

Plaintiff's Rule 11(b) Submission should be rejected, and reasonable attorneys' fees and expenses awarded to Defendants, because Plaintiff made multiple allegations that could not have been supported by an objectively reasonable inquiry.

Specifically, Plaintiff advanced allegations and arguments entirely unsupported by the sources it cited, and it misrepresented key facts in support of the securities fraud claims it asserted in this action:

- Plaintiff mischaracterized a paraphrased statement by GE in a September 20, 2018 *Reuters* article;

- Neither the SAC nor the sources it cites supported the Opposition's scienter argument that GE "actively tried to prevent" an analyst from disclosing the H-Class oxidation issue;

- Plaintiff's "Goodwill Fraud Timeline" blatantly misstated multiple facts;

- Plaintiff manufactured the "fact" that GE's second quarter and third quarter 2018 goodwill impairment analyses used the same data; and

- Plaintiff's AC misrepresented the date of GE's first disclosure of the H-class oxidation issue in an apparent effort to conceal the fact (fatal to Plaintiff's loss causation theory) that GE's stock price *increased* following that disclosure.

These unsupported (and unsupportable) allegations at the heart of Plaintiff's complaint compel the imposition of Rule 11(b) sanctions. *See In re Austl.*, 712 F. Supp. 2d at 264 (imposing sanctions where there was "no evidence whatsoever for the allegation" at issue).

### A.   Plaintiff Mischaracterized GE's Paraphrased Statement in a September 20, 2018 *Reuters* Article

Plaintiff's first allegation "utterly lacking in support," *In re Austl.*, 712 F. Supp. 2d at 264, drew from a September 20, 2018 *Reuters* article reporting on the shutdown of four H-class turbines due to the oxidation issue.  The article noted that "[t]he problem was first discovered on turbine blades in a natural gas-fueled turbine operated by Exelon Corp. in Texas a few weeks ago, GE told

*Reuters*." Ex. 32, Sept. 20, 2018 *Reuters* Article, at 1.  Seizing on the phrases "first discovered"

and "a few weeks ago," Plaintiff alleged that this statement was actionable, and claimed that it was

"blatantly false" because GE allegedly "knew of the oxidation issue since 2015 and had been in

the field inspecting and replacing turbine blades since 2017."  Opp., Dkt. No. 95, at 9-10; SAC

¶¶ 120, 495-96; *see also* AC ¶¶ 119, 347-48.  In other words, Plaintiff read out of the statement

and the entire article all references to the Exelon turbine shutdown, claiming GE told *Reuters* that

oxidation generally was "first discovered" "a few weeks ago."  That misguided claim warrants

sanctions for multiple reasons.

     As an initial matter, both the AC and SAC alleged that "[t]he article *quoted* GE," AC ¶ 119;

SAC ¶ 120, when in fact, as the Court recognized, the article makes clear the statement at issue

was "*not* . . . issued by GE, but [instead] a press report about an interview," Opinion & Order, Dkt.

No. 105, at 32-33.  Likewise, when "read[ing] the statement at issue with care and in context"—

which any reasonable inquiry would have entailed—"the reference to a 'few weeks ago' refers to

the discovery of the breakdown at Exelon," and not to "the history of the oxidation issue

generally," as Plaintiff claimed.[4]  Opinion & Order, Dkt. No. 105, at 32-33.  As this Court

explained:

> [Plaintiff] first argue[s] that GE falsely stated that it "first discovered" the oxidation
> problem with blades a "few weeks ago" when GE had known of the oxidation problem
> since 2017.  Since this is not a statement issued by GE, but a press report about an

---

[4]    Plaintiff doubled-down on its mischaracterizations in its appellate briefing, arguing that
"the Court's interpretation of the statement is plainly incongruous with the actual article":

> On September 20, 2018, GE told *Reuters* that an oxidation issue was "first
> discovered on turbine blades in a natural gas-fueled turbine operated by Exelon
> Corp. in Texas a few weeks ago." ¶ 495, JA-151.  Accepting Plaintiff's allegations,
> as the Court must at this stage, a reasonable investor would interpret the September
> 20, 2018 statement to mean that the *oxidation issue* was "first discovered . . . a few
> weeks ago."

Brief of Appellant at 39-41, *In re Gen. Elec. Sec. Litig.*, No. 20-1741, 2021 WL 357756 (2d Cir.
Feb. 3, 2021) (Dkt. No. 40) (emphasis and alteration in original).

interview, it is particularly important to read the statement at issue with care and in context.  Read in that way, the reference to a "few weeks ago" refers to the discovery of the breakdown at Exelon.  For instance, the lede of the article indicates that it is about the shutdown of turbines at the Exelon facility.  In the key passage, GE explains that it first learned about the problem with the Exelon blades "a few weeks ago."  In the sentences that follow, the focus continues to be on what had happened at Exelon and when the Exelon facility would return to operation.  The reporter adds that neither GE nor Exelon provided details about the oxidation issue, further undermining the plaintiffs' effort to read the highlighted passage as a broader statement about the history of the oxidation issue generally.

*Id.* at 31-33.

That the interpretation adopted by this Court is the only well-grounded reading of the *Reuters* article is confirmed not just by the article itself, but also by other press coverage that Plaintiff cited in its complaints—coverage that reported, for example, that "GE ha[d] known about the oxidation problem for months."  Ex. 33, Sept. 20, 2018 *WSJ* Article, at 3 (cited at SAC ¶ 122) ("GE has known about the oxidation problem for months and has been working on the solution with customers, according to people familiar with the situation. . . .  While GE knew of the problem, the people said, the failure occurred even sooner than expected."); *see also* Ex. 35, Sept. 20, 2018 *Bloomberg* Article, at 1 (cited at SAC ¶ 124) ("While the problem was discovered earlier this year and communicated to customers, the matter gained urgency in recent weeks after an incident prompted utility Exelon Corp. to temporarily shut down two power plants.").  Any reasonable inquiry would have determined that GE was not telling reporters (or anyone else) that it had "first discovered" the H-class oxidation issue in September 2018.  Plaintiff's failure to limit their pleadings to that which is supported by the very materials they claim evidence fraud, is a violation of Rule 11(b).  *See In re AOL*, 2013 WL 6331802, at *3-4 (rejecting that "a broad interpretation" of a *Reuters* article was "one that fell within the bounds of vigorous advocacy"); *In re Austl.*, 712 F. Supp. 2d at 265 (finding violation of Rule 11(b) where plaintiff's counsel arrived at a conclusion other than what "a natural reading of the article would indicate").

Compounding this error, the AC and SAC contained numerous other allegations intended to muddle the timing of when GE knew about the H-class oxidation issue. Frequently, Plaintiff confounded the H-class blade issue with earlier problems experienced in F-class turbines to attempt to make it seem as if GE had "admitted" it "knew" about the H-class's susceptibility to oxidation earlier than it did. *See, e.g.*, AC ¶¶ 1, 11, 15, 142, 164-68, 174; SAC ¶¶ 146, 163-68, 177. For instance, the first subheading found in the SAC section entitled "Additional Facts Evidencing GE's Scienter Regarding the H-class Turbine Fraud" reads, "GE Admitted That It Knew of the Oxidation Problem and Its Impact on the H-Class Turbines Since 2015." SAC at 50. But the January 25, 2019 *Reuters* article upon which those allegations rely specifies that "GE told *Reuters* that after the [F-class] blade broke in 2015, GE did not know at first that the problem would also afflict its HA models." SAC ¶¶ 77-78 (discussing oxidation-related issues in 9FB turbines in 2015); SAC ¶¶ 163-68 (discussing Ex. 46, Jan. 25, 2019 *Reuters* Article); Ex. 46, Jan. 25, 2019 *Reuters* Article, at 2. Moreover, in both complaints, Plaintiff claimed that H-class turbines operating in Pakistan in 2017 "experience[d] numerous issues, including vibration, which may be linked to the oxidation defect"—even though the articles cited contain no mention of oxidation, and Plaintiff provides no other support for its conjecture. *See* AC ¶¶ 106-10; SAC ¶¶ 94-103; *see, e.g.*, Ex. 18, Dec. 27, 2017 Reuters Article. Rule 11(b) precludes a plaintiff from relying upon these types of unsupported factual allegations. *See In re AOL*, 2013 WL 6331802, at *3-4; *In re Austl.*, 712 F. Supp. 2d at 265.

### B. Neither the SAC nor the Sources It Cites Supported the Opposition's Claim that GE Prevented an Analyst from Disclosing the H-class Oxidation Issue

In an attempt to bolster its theory of scienter in its Opposition, Plaintiff claimed that "Defendants, including the GE Board, actively tried to prevent critical securities analyst Stephen Tusa of JP Morgan from disclosing the issues plaguing the HA turbine and its impact on GE's

financial condition."  Opp., Dkt. No. 95, at 18 (citing SAC ¶ 404).  But Plaintiff had no support

for its bald assertion of a cover-up.  Plaintiff cited a paragraph in the SAC that quotes a June 7,

2019 article in *The Wall Street Journal* and alleges that GE attempted to identify Tusa's sources,

that an unnamed Board member "questioned JP Morgan about the research," and that "GE took

extra steps to keep any developments under wraps."  SAC ¶ 404.  There is nothing in the SAC, the

cited *Wall Street Journal* article, or Plaintiff's Opposition, however, that supports the claim that

GE "actively tried to prevent" Tusa's disclosure of anything, let alone his disclosure of anything

about GE's H-class turbines in particular.  In fact, the *Wall Street Journal* article suggests nothing

more than a reasonable effort by the Company to protect its confidential information generally.

As to H-class turbines specifically, it states that Tusa likely received his information "by talking

to utility customers who were getting briefings from GE on the emerging problem," and contains

not even a suggestion that GE "actively tried to prevent" those talks or the resulting report.  *See*

Thomas Gryta & David Benoit, *GE's Nemesis: An Eerily Prescient Bear*, WALL ST. J. (June 7,

2019), https://www.wsj.com/articles/ges-nemesis-an-eerily-prescient-bear-11559905201.  Indeed,

Tusa's first report on the H-class oxidation issue, dated September 20, 2018, suggests the opposite,

specifying that his story had been "confirmed" by GE "on Monday," September 17.  *See* SAC

¶¶ 120, 127; Ex. 34, Sept. 20, 2018 J.P. Morgan Report, at 2.  And, as the SAC (and Tusa)

acknowledges, GE itself disclosed the issue in a LinkedIn post and press release on September 19,

2018, *before* Tusa's report.  *See* SAC ¶ 119; Ex. 30, Sept. 19, 2018 LinkedIn Post; Ex. 31, Sept.

19, 2018 Press Release; *see also* Ex. 34, Sept. 20, 2018 J.P. Morgan Report, at 2 (explaining that

the LinkedIn post appeared "[y]esterday morning just before market open").  As far as Defendants

can tell, the claim that GE "actively tried to prevent" H-class disclosures by Tusa was something

Plaintiff made up.[5]  Rule 11(b) prohibits parties from relying on such unsubstantiated allegations. *See AJ Energy LLC v. Woori Bank*, No. 18 Civ. 3735, 2019 WL 4688629, at *10 (S.D.N.Y. Sept. 26, 2019) (finding Rule 11(b) violation where "the [complaint] and its attachments themselves make plain that '[claims] were not grounded in fact'" (quoting *Levine v. F.D.I.C.*, 2 F.3d 476, 479 (2d Cir. 1993))), *aff'd*, 829 F. App'x 533 (2d Cir. 2020).

### C.    Plaintiff's "Goodwill Fraud Timeline" Blatantly Misstated Facts

The "Goodwill Fraud Timeline" that Plaintiff filed in connection with its Opposition, Dkt. No. 96-2, blatantly misstated several facts central to Plaintiff's goodwill impairment fraud theory. Even though Defendants' Motion to Dismiss the SAC had noted—and the SAC itself had conceded, SAC ¶¶ 222-26—that GE had performed an interim goodwill impairment test in the fourth quarter of 2017 resulting in an impairment of $217 million for one Power reporting unit, Mem. of Law in Supp. of Mot. to Dismiss the SAC, Dkt. No. 90, at 6-8, 15-16; *see also* Ex. 22, 2017 10-K, at 84 (reporting on February 23, 2018 that GE had performed an interim impairment test at and taken an impairment charge for its Power Conversion reporting unit in the fourth quarter), Plaintiff's timeline falsely claimed that GE did not conduct *any* interim goodwill impairment testing in the quarter, omitting any mention of the $217 million charge GE had taken, Dkt. No. 96-2.

The timeline also stated that GE's 2017 Form 10-K had removed "Alstom risk warnings," when it did no such thing.  *See* Dkt. No. 96-2; Ex. 22, 2017 10-K, at 106.[6]  And indeed, Defendants'

---

[5]    Nor is there any indication GE "actively tried to prevent" Tusa's October 10, 2018 report (or anyone else's reporting) on "the September 12-13 H-class turbine user meeting."  SAC ¶ 144. Contrary to the SAC's assertion that Tusa "informed investors [of the meeting] for the first time," *id.*, the *Combined Cycle Journal* had attended the meeting and reported on it on October 8, *see* SAC ¶ 110; Ex. 42, Oct. 8, 2018 *CCJ* Article.

[6]    The risk warning read:

Motion to Dismiss the SAC had once again already put Plaintiff on notice of the same, arguing that the SAC failed to plead an Item 303 violation because "Plaintiff acknowledge[d] GE's warnings leading up to and throughout the Class Period, in which GE told investors of the risks of a potential impairment charge, particularly if expected synergies from the Alstom acquisition did not materialize or market demand continued to decline."  Dkt. No. 90 at 7, 20.

Allegations "utterly lacking in support"—like those appearing in the timeline—violate Rule 11(b).  *See In re Star Gas Sec. Litig.*, 745 F. Supp. 2d 26, 37-38 (D. Conn. 2010) (finding Rule 11(b) violation where defendant's Form 10-K "clearly indicate[d]" that "its listed customer attrition rate was exclusive of customers added through new acquisitions," meaning it "could not have been masking these attrition numbers [through acquisitions] as [p]laintiffs [] suggested").

### D.   The Sources Plaintiff Relied Upon Belied Its Claim that GE's Q2 2018 and Q3 2018 Goodwill Impairment Analyses Used the Same Data

In an attempt to bolster its claims based on the Q3 2018 write-down of the goodwill estimates for GE's Power segment, Plaintiff added to the SAC the allegation that GE's pre-write-down valuations of Power's reporting units (the first step in periodic impairment testing of goodwill) "lacked any reasonable basis" because "[t]he [Q2] 2018 and [Q3] 2018 impairment analyses use[d] the same data, yet arrive[d] at opposite results."  SAC ¶ 355.  It is true that goodwill impairment analyses were conducted in both quarters.  *See id.*  But there is absolutely no factual basis for Plaintiff's claim that the testing in those two periods was based on the "same data."

Plaintiff claims that "[t]he [Q2] 2018 interim impairment test considered the data as it

---

[O]ur anticipated returns from mergers and acquisitions such as the Alstom acquisition in 2015 . . . include cost and growth synergy benefits over a multi-year period that we may not fully realize.  As a result of these and other acquisitions over time, we have recorded significant goodwill and other intangible assets on our balance sheet, and if we are not able to realize the value of these assets we may be required to incur charges relating to the impairment of these assets.

existed 'at June 30, 2018,'" while "[t]he [Q3] 2018 annual impairment test considered the data 'as

of July 1 of that year.'"  *Id.*  GE's Q3 2018 filing did indeed state that it "test[ed] goodwill for

impairment annually in the third quarter of each year *using data as of July 1* of that year."  Ex. 43,

at 80.  But GE's Q2 2018 filing had merely stated that "[a]s of June 30, 2018 [*i.e.*, the end of the

second quarter], [GE] believe[d] goodwill [wa]s recoverable for all of [its] reporting units."  Ex.

28, at 81.  GE's Q2 filing never stated that the Q2 interim impairment analysis relied on data "as

of" or "as it existed at" any particular date.  Thus, on its face, the Q2 filing provided no support

for Plaintiff's unsubstantiated theory that the same data was used.  After Defendants pointed out

this mischaracterization in their Motion to Dismiss the SAC, Plaintiff appeared to concede it may

have been mistaken in alleging that the two quarters' impairment analyses used the same data, but

that did not stop it from continuing baselessly to call the data "nearly identical."  *See* Opp., Dkt.

No. 95, at 22 & n.18.  Plaintiff's mischaracterization constituted another Rule 11(b) violation.  *See*

*Levine*, 2 F.3d at 479 (affirming imposition of sanctions where "counsel in his attempts at creativity

concocted 'facts' that were not well grounded, and therefore exceeded the bounds of conduct

acceptable of members of the bar of this court as well as those incorporated in Fed. R. Civ. P.

11").[7]

### E. The AC Misrepresented the Date of GE's First Disclosure of the H-class Oxidation Issue

In addition to the foregoing unsupported allegations, the AC's misrepresentation of a

critical fact like the timing of the public disclosure of information Plaintiff claims Defendants

---

[7]      Plaintiff's Rule 11(b) Submission notes that, following the goodwill impairment charge, the SEC "expand[ed] an existing investigation" to include it, adding that GE settled with the SEC "charges for disclosure failures in its power and insurance businesses" on December 9, 2020.  Rule 11(b) Submission ¶¶ 6, 22.  But contrary to Plaintiff's suggestion, the settlement had nothing to do with goodwill.  *See* Gen. Elec. Co., Exchange Act Release No. 90620 (Dec. 9, 2020), https://www.sec.gov/litigation/admin/2020/33-10899.pdf.

fraudulently withheld from investors provides another basis on which to impose sanctions under Rule 11(b). "A pleading violates Rule 11(b)(3) where 'after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact.'" *In re Austl.*, 712 F. Supp. 2d at 263 (quoting *Kropelnicki*, 290 F.3d at 131); *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 401-02 (1990) (requiring a more thorough inquiry "when an attorney has months to prepare a complaint," rather than "only a few days"), *superseded by rule on other grounds*. Here, any reasonable inquiry by counsel—a review of the very sources they cited—would have informed them the AC's allegation regarding the timing of the disclosure of the H-class oxidation issue was not "well grounded in fact."

The AC omitted entirely GE's September 19, 2018 LinkedIn post and press release disclosing the H-class oxidation issue, incorrectly asserting that the issue "abruptly came to light" on September 20 via news articles and analyst reports. AC ¶¶ 116, 119-21, 124. Any reasonable inquiry would have uncovered GE's September 19 disclosure prior to the filing of the AC, and Plaintiff's months-long investigation certainly should have—more than one source the AC relied upon referenced the disclosure. *See* Ex. 37, Sept. 24, 2018 Gabelli Report, at 1 (cited at AC ¶ 132) ("There was a post on 'GE Reports' on September 19th, and also on Power CEO Russel[l] Stokes' LinkedIn page, which indicated that an HA turbine at a power plant encountered an oxidation issue . . . ."); Ex. 34, Sept. 20, 2018 J.P. Morgan Report, at 2 (cited at AC ¶¶ 124-26) ("Yesterday morning just before market open, Power CEO Russel[l] Stokes, on a LinkedIn post entitled 'Making The Best Turbines Is Hard Enough. At GE, We Never Stop Making Them Better' . . . noted identifying 'an oxidation issue . . .'.").

Critically, Plaintiff's misrepresentation allowed it to advance a (facially) viable loss causation theory by claiming that disclosure of the H-class issue caused GE's stock price to fall on September 20. *See* AC ¶ 128. In fact, after GE's initial disclosure on September 19, GE's stock

price *increased* from $12.17 to $12.37 as of market close.  Ex. 7, GE Historical Stock Price.  As Defendants argued in their Motion to Dismiss the AC, that fact doomed Plaintiff's H-class-based claims:  to plead a claim through a corrective disclosure theory of loss causation, Plaintiff needed to allege facts showing that the disclosure of a previously concealed relevant "truth" caused GE's stock price to decline, not increase.  *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342-43, 347 (2005).  The post-September 19 reports the AC pointed to merely repeated or analyzed the already-disclosed information, and thus were insufficient to establish loss causation.[8]  *See, e.g.*, *Turner v. MagicJack VocalTec, Ltd.*, No. 13 Civ. 0448, 2014 WL 406917, at *13 (S.D.N.Y. Feb. 3, 2014); *see also* Mem. of Law in Supp. of Mot. to Dismiss the AC, Dkt. No. 78, at 38-39.

On amendment, Plaintiff had no choice but to recognize that GE disclosed the H-class oxidation issue on September 19, 2018.[9]  SAC ¶ 119.  That the SAC addressed the issue, however, does nothing to absolve the Rule 11(b) violations of the AC.  *See In re Austl.*, 712 F. Supp. 2d at 266 (rejecting argument that "the filing of [an] [a]mended [c]omplaint, which abandoned the erroneous allegation contained in [the initial complaint], effectively cured the error" because the PSLRA "makes plain" that "the sanctions inquiry applies to '*any* complaint'" (emphasis in original)).

---

[8]    In deciding Defendants' Motion to Dismiss the SAC, the Court did not need to assess whether Plaintiff adequately pleaded loss causation, Opinion & Order, Dkt. No. 105, at 19, but the issue would have provided another independent basis for dismissal, *see* Mem. of Law in Supp. of Mot. to Dismiss the AC, Dkt. No. 78, at 36-40; Mem. of Law in Supp. of Mot. to Dismiss the SAC, Dkt. No. 90, at 37-40.

[9]    Plaintiff took a similar approach to GE's stock price increase following the Company's initial announcement of the Power segment goodwill impairment charge on October 1, 2018.  The AC omitted the increase altogether, *see* AC ¶¶ 34, 320, but after Defendants noted it in their Motion to Dismiss the AC, Plaintiff attempted to address the increase in the SAC, *see* SAC ¶ 329.

### F.   The Failures of the AC, SAC, and Opposition Were Substantial Under Rule 11(b), and the PSLRA's Presumptive Remedy Applies

Plaintiff's remaining allegations, all of which were dismissed for failure to state a claim, do nothing to render insubstantial the Rule 11(b) violations addressed above.  Of the 13 statements relating to the H-class blade issue, "[t]he SAC d[id] not adequately plead a material misrepresentation as to any," with "[o]nly four . . . requir[ing] any detailed discussion"; as to scienter, "the non-culpable inference offered by the defendants [wa]s decidedly more plausible," and "the SAC ma[de] no particularized scienter allegations supporting the duty to disclose under Item 303."  Opinion & Order, Dkt. No. 105, at 25, 29, 34-35.  Plaintiff's theory regarding the goodwill write-down "ultimately rest[ed] entirely on a disagreement about the exercise of judgment," and "[t]o plead scienter, [it] rel[ied] almost entirely on the size" of the write-down— which was plainly insufficient.  *Id.* at 39, 42.  These claims, which "patently lacked merit," do not suffice to "make the suit as a whole nonabusive."  *See In re Austl.*, 712 F. Supp. 2d at 269 & n.16 (quoting *Gurary*, 303 F.3d at 223).

Furthermore, Plaintiff's Rule 11(b) Submission does not even attempt to address whether the violations were de minimis, or whether a full sanction award would create an unreasonable burden.  The PSLRA's presumptive remedy applies, and Plaintiff's multiple failures to comply with Rule 11(b) warrant the imposition of sanctions in the full amount of Defendants' reasonable attorneys' fees and costs.  *See* 15 U.S.C. § 78u-4(c)(3)(A)(ii).

### CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court enter an order awarding Defendants the reasonable attorneys' fees and expenses incurred in connection with this litigation.  *See* 15 U.S.C. § 78u-4(c)(3)(A)(ii).  In the event that the Court enters that order,

Defendants would request the opportunity to detail the fees and expenses that arose out of the sanctionable filings.

Dated: New York, New York
      April 2, 2021

Respectfully submitted,

LATHAM & WATKINS LLP

By:   /s/ Blake T. Denton
       Miles N. Ruthberg
       Blake T. Denton
       885 Third Avenue
       New York, New York 10022
       (212) 906-1200
       miles.ruthberg@lw.com
       blake.denton@lw.com

       Sean M. Berkowitz (*pro hac vice*)
       330 North Wabash Avenue, Suite 2800
       Chicago, Illinois 60611
       (312) 876-7700
       sean.berkowitz@lw.com

       William J. Trach (*pro hac vice*)
       200 Clarendon Street
       Boston, Massachusetts 02116
       (617) 948-6000
       william.trach@lw.com

       Sarah A. Tomkowiak (*pro hac vice*)
       555 Eleventh Street NW
       Washington, D.C. 20004
       (202) 637-2200
       sarah.tomkowiak@lw.com

       *Attorneys for Defendants General Electric*
       *Company, John L. Flannery, Jamie S.*
       *Miller, Jan R. Hauser, Russell Stokes,*
       *Chuck Nugent, Scott Strazik, and*
       *Joe Mastrangelo*